UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
AT WHITE PLAINS
-------------------------------------------------------------------X

DANIEL CAMERON M.D.

                      Plaintiff,

        -against-

JANN BELLAMY M.D.; DAVID H. GORSKI M.D.;
STEVEN NOVELLA M.D.; KIMBALL C.
ATWOOD IV M.D.; HARRIET HALL M.D.;
MARK A. CRISLIP M.D.,

                      Defendants.
-------------------------------------------------------------------X

**VERIFED COMPLAINT**
**FOR DAMAGES AND**
**<u>INJUNCTIVE RELIEF</u>.**

Case No.:

**Trial by Jury Requested**

       Plaintiff by his undersigned attorneys sets forth the following as and for his verified

complaint  against the defendants.

## <u>IDENTITY OF THE PARTIES</u>

       1.    Plaintiff is an individual physician who practices medicine in the State of New

York. His principal place of business is at 657 E Main St, Mount Kisco, NY 10549 and he is a

citizen of the state of New York with a principal domicile in Chappaqua, Westchester County, NY.

The property which has been damages  and a substantial part of the damages to plaintiff's business

as complained of in this pleading were sustained in Westchester County, NY.

       2.    Defendant Jan Bellamy JD ("Bellamy") is an individual and an attorney at law duly

licensed to practice law in the state of Florida. Upon information and belief Bellamy has a principal

place    of    residence    in    the    state    of    Florida    at    509    Vinnedge    Ride

Tallahassee, FL 32303-5141  and a principal place of  business address at 123 South Calhoun

1

Street Tallahassee, FL 32302. Bellamy is a citizen of the State of Florida. Defendant Bellamy is a "contributor" writer to a web site which is self-named and self-anointed as sciencebased medicine.org. Defendant Bellamy is made a party defendant to this action because she authored and caused to be posted on "ScienceBasedmedicine.org" written defamatory statements against the plaintiff as more particularly set forth below in this complaint.

3.      Defendant David H. Gorski M.D. ("Gorski") is and at all of the above times hereinabove and hereinafter was an individual and a physician who practices medicine in the state of Michigan. Gorski has a principal place of residence at 4100 John R. Street, Detroit MI 48201 and a principal place of business at 4100 John R St, Detroit, MI 48201. Gorski is a citizen of the state of Michigan. Gorski is the editor in chief of the articles posted on sciencebasedmedicine.org. Gorski is made a party defendant to this action because he posted, caused to be posted or conspired with the other named defendants to post on "ScienceBasedmedicine.org" written defamatory statements against the plaintiff as more particularly set forth below in this complaint.

4.      Defendant STEVEN NOVELLA M.D. ("Novella") is and at all of the above times hereinabove and hereinafter was an individual and a physician who practices medicine in the state of Connecticut.  Upon information and belief, at all of the times hereinabove and hereinafter mentioned, Novella had and has a principal place domicile in the state of Connecticut at 333 Cedar Street, New Haven, CT  06510 and a principal place of business at 800 Howard Ave, New Haven, CT 06519. Novella is a citizen of the State of Connecticut. At all of the relevant times hereinabove and hereinafter mentioned Novella was and still is the founder and executive editor of the articles posted on sciencebasedmedicine.org. Novella is made a party defendant to this action because he posted, caused to be posted or conspired with the other named defendants to post on

"ScienceBasedmedicine.org" written defamatory statements against the plaintiff as more particularly set forth below in this complaint.

5.    Defendant KIMBALL C. ATWOOD IV M.D. ("Atwood") is and at all of the above times hereinabove and hereinafter was an individual and a physician who practices medicine in the state of Massachusetts.   Upon information and belief at all of the times hereinabove and hereinafter mentioned, Atwood had a residence at 30 Plainfield Street Waban MA 02438 and has a principal place of business at 31 South St Jamaica Plain, MA 02130. Waban is a citizen of the Commonwealth of Massachusetts. At all of the relevant times hereinabove and hereinafter mentioned Atwood was and still is one of the editors of the articles posted on sciencebasedmedicine.org. Atwood is made a party defendant to this action because he posted, caused to be posted or conspired with the other named defendants to post on "ScienceBasedmedicine.org" written defamatory statements against the plaintiff as more particularly set forth below in this complaint.

6.    Defendant HARRIETT HALL M.D. ("HALL") is and at all of the above times hereinabove and hereinafter was an individual and a retired  physician who resides in the state of Washington.   At all of the times hereinabove and hereinafter mentioned,  Hall had and has a principal place of residence 11701 138 Ave Ct E, Puyallup, WA 98374. Hall is a citizen of the state ow Washington. At all of the relevant times hereinabove and hereinafter mentioned Hall was and still is one of the editors of the articles posted on sciencebasedmedicine.org. Hall is made a party defendant to this action because he posted, caused to be posted or conspired with the other named defendants to post on "ScienceBasedmedicine.org" written defamatory statements against the plaintiff as more particularly set forth below in this complaint.

3

7.    Defendant MARK A. CRISLIP M.D. ("Krislip") is and at all of the above times hereinabove and hereinafter was an individual and a physician who practices medicine in the state of Oregon.  At all of the times hereinabove and hereinafter mentioned, Krislip had and has a principal place of residence in the state of Oregon at 1015 NW 22nd Avenue, Portland, Oregon 97210,   and a principal business address at  1200 NW 23rd Ave, Portland, OR 97210.  At all of the relevant times hereinabove and hereinafter mentioned Krislip was and still is one of the editors of the articles posted on Science-Based medicine.org. Krislip is made a party defendant to this action because he posted, caused to be posted or conspired with the other named defendants to post on "ScienceBasedmedicine.org" written defamatory statements against the plaintiff as more particularly set forth below in this complaint.

8.    All of the defendants captioned above shall me collectively referred to hereinafter as "defendants".

## JURISDICTION

9.    This Court's subject matter diversity jurisdiction is predicated upon 28 USC Sec. 1332 because the amount in controversy exceeds $75,000.00 and the dispute is between the Plaintiff who is a citizen of the state of New York and the defendants, each of whom are citizens of various states of the United States as alleged above in this complaint.

## VENUE

10.    Venue is properly based in the US District Court, Southern District of New York pursuant to 28 USC Sec. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Westchester County, New York which is within the territorial jurisdiction of the US District Court, SDNY.  Specifically, the damages caused to plaintiff's

4

business by defendants' internet libelous post occurred and continue to occur in Westchester County where Plaintiff's business is located.

11.     Venue is also properly based in this Court pursuant to 28 USC Sec. 1391(b)(3) any defendant is subject to the court's personal jurisdiction with respect to such action subsequent to the service of the Summons and Complaint pursuant to Fed. .R. Civ. Proc. 4.

## RELEVANT FACTS

**(i)     General background about the Plaintiff and his business which has been and continues to be affected by defendants' libelous postings.**

12.     The Plaintiff is a physician who practices medicine in the state of New York and treats patients with Lyme disease. His business consists of a medical practice which is based primarily upon treatment of patients who have a medical history of Lyme and associated diseases such as Bartonella, Babesia and other associated tick-borne diseases.

13.     Plaintiff's business in located in Westchester County, New York within the territorial venue of the Southern District of New York. Westchester County New York as well as a majority of the territorial geographical area of the state of New York have been recognized as endemic geographical areas for Lyme disease by the CDC.

14.     Plaintiff's patients are national and international individuals who have been diagnosed either by the Plaintiff or by other physicians preceding him with Lyme and associated diseases.

15.     Existing and prospective patients research the Plaintiff and reach the Plaintiff through word of mouth or internet searches. The patients also verify Dr. Cameron's credentials, publications and stature through internet searches.

16.     Consequently, Dr. Cameron's professional reputation and integrity is in part affected by internet postings regarding his activities and by other postings commenting on his business success, legitimacy and nature of the medical treatments and diagnoses offered by the Plaintiff to his patients.

17.     As discussed below on or about June 22, 2017 and subsequently in a reposting of November 9, 2017 the defendant Bellamy posted and subsequently reported a defamatory article titled "'Chronic Lyme' VIP Daniel Cameron disciplined by New York medical authorities". A copy of the defamatory article is annexed hereto as Exhibit "A". See https://sciencebasedmedicine.org/chronic-lyme-vip-daniel-cameron-disciplined-by-new-york-medical-authorities/.

18.     The re posting of the same defamatory article took place on November 8, 2017 within another article posted by the defendant Bellamy titled "Another "Chronic Lyme VIP disciplined by New York Authorities: Bernard Raxlen" (hereinafter "Raxlen Posting). See Exhibit "B" hereto and https://sciencebasedmedicine.org/another-chronic-lyme-vip-disciplined-by-ny-medical-authorities-bernard-raxlen/.

19.     The link which reposts on November 9, 2017 the defamatory article regarding the Plaintiff appears on the sixth full line of the Raxlen article with a mis reference of Dr. Cameron's first name as "David". In clicking on the link titled "David Cameron M.D." within the Raxlen posting the browser is re-routed to the entire article and cross references titled "'Chronic Lyme' VIP Daniel Cameron disciplined by New York medical authorities". See exhibit "B" hereto and Exhibit "A" hereto.

20.     Both the initial defamatory posting regarding Dr. Cameron (Exhibit "A" hereto) and the re-posting of the same (Exhibit "B" hereto) were authored by defendant Bellamy. Upon

information and belief both the posting and the reposting were authored in Florida and caused to

be posted on the website of ScienceBasedMedicine.org and on the worldwide web from Florida

on both June 22, 2017 and November 9, 2017.

21.    The remaining defendants are the editors of ScienceBasedMedicine.org who

participated in the posting and reposting of the defamatory article and knew and should have

known that the same posting contained defaming disparaging and knowingly false statements

made and posted by the defendants with reckless disregard for the truth and for the purposes of

damaging the reputation of the Plaintiff in his business and vocation and for the further purpose of

causing harm to and unreasonably interfering with  Plaintiff's business.


**(ii)     Background and content of the initial
          posting of the libelous defamatory statements
          and the contents of the same.**

22.    On or about June, 2017, the Plaintiff entered into a Consent Agreement with the

New York Board of Professional Medical Conduct  which became a public record. A copy of the

Consent Agreement can be found at

https://apps.health.ny.gov/pubdoh/professionals/doctors/conduct/factions/FileDownloadAction.a

ction?finalActionId=8470&fileName=BRD+161183.pdf&fileSeqNum=2.

23.    Specifically, the Consent Order made no findings of medical misconduct and did

not sustain any of the allegations of the Statement of Charges. In fact, as specifically stated by the

defendants themselves in the initial posting (Exhibit "A"), the allegations of the Statement of

Charges were never sustained by the New York Board of Professional Medical Conduct nor proven

by the New York prosecutors. The Consent Order was merely a settlement of all of the outstanding

charges and nothing more.

24.     The true legal status of the consent order however did not stop the defendants from defaming the Plaintiff in his profession, depicting him as a predator who preys on Lyme disease patients for his own financial gain and falsely depicting the statement of charges as actual misconduct which the defendants contend that the Plaintiff engaged in with respect to his patients. The particular false statements contained in the posting (Exhibit "A" hereto) are discussed below.

25.     Prior to the libelous posting of June 22, 2017 (Exhibit "A" hereto), on or about March 15, 2018 the defendant Bellamy with the knowledge consent approval, participation and in conspiracy with the remaining defendants posted, upon information and belief from the state of Florida the following defamatory statement on the world wide web and on the website sciencebasedmedicine.org:

> "Lyme literate" doctors are scamming patients out of thousands of dollars with needless long-term antibiotics based on a fake diagnosis of "chronic Lyme." So why are state legislators trying to protect these doctors from discipline and make insurers pay for unnecessary treatments?" https://sciencebasedmedicine.org/tag/lyme-literate-mds/. See Exhibit "B" annexed hereto. See Exhibit "C" hereto.

26.     On or about June 22, 2018 the defendant Bellamy with the knowledge consent approval participation and in conspiracy with the remaining defendants posted, and belief from the state of Florida the following titled defamatory article on the world wide web: "'Chronic Lyme' VIP Daniel Cameron disciplined by New York medical authorities". A copy of the defamatory article is annexed hereto as Exhibit "A". See https://sciencebasedmedicine.org/chronic-lyme-vip-daniel-cameron-disciplined-by-new-york-medical-authorities/.

27.     The article (Exhibit "A" hereto) purported to draw attention to the Consent Order https://apps.health.ny.gov/pubdoh/professionals/doctors/conduct/factions/FileDownloadAction.action?finalActionId=8470&fileName=BRD+161183.pdf&fileSeqNum=2.

while using the same as a pretext to launch a defamatory campaign of vitriol and false statements upon the Plaintiff which caused and continue to cause damage to his reputation and business.

28.     Rather than simply re posting the New York official consent order and the attached statement of charges without any comment of their own, the defendants proceeded to defame and smear the plaintiff and his professional reputation by making knowingly false and defamatory statements in the article as set forth hereinafter. The statements were calculated and aimed at damaging Plaintiff's business.

29.     The publication of June 22, 2017 specifically referenced Dr. Cameron as a "Lyme literate guru" (second page exhibit "A" hereto) while republishing the statement of March 15, 2018 stating that "Lyme literate" doctors are scamming patients out of thousands of dollars with needless long-term antibiotics based on a fake diagnosis of "chronic Lyme." Through the links provided at the end of the article reading: Posted in: "Lyme" - https://sciencebasedmedicine.org/category/lyme/, - Chronic Lyme disease - https://sciencebasedmedicine.org/tag/chronic-lyme-disease/; "Lyme Literate MD's https://sciencebasedmedicine.org/tag/lyme-literate-mds/. The printout from the re publication of the defamatory statement associated with the article titled "'Chronic Lyme' VIP Daniel Cameron disciplined by New York medical authorities" are annexed hereto as Exhibit "D". As discussed above, the defamatory article (Exhibit "A" hereto) and the links associated with the same was republished from Florida on November 8, 2017. See exhibit "C" hereto.

30.     The plaintiff contends that the statement that he as a "Lyme literate guru" belonging to the group identified by the defendants as "Lyme literate doctors who are scamming patients out of thousands of dollars with needless long-term antibiotics based on a fake diagnosis of "chronic

Lyme" is libelous, knowingly false and made with malice and with intent to harm Plaintiff's business and reputation and with the further intent to interfere with plaintiff's business.

31.     Additional libelous and intentional defamatory statements are contained at the bottom of the second page and top of the third page of the posted article which suggest that Dr. Cameron stipulated to charges of "practicing medicine with negligence on more than one occasion, incompetence on more than one occasion, gross negligence, gross incompetence, and/or failing to maintain accurate patient medical records". See exhibit "A" hereto. This statement is knowingly false and was made with reckless disregard for the truth and was calculated to injure plaintiff's business and reputation as he never stipulated to any of the charges listed by the defendants in their libelous posting.

33.     In addition, the following statements posted by the defendants and contained in the subject defamatory posting (exhibit "A" hereto - 11th page) are libelous, knowingly false and intended to defame the Plaintiff in his profession and vocation and to cause harm to his business:

> "Reading between the lines, Cameron had only one tool, a hammer, so he saw every problem as a nail. The possibility that the patient might be suffering from something other than "chronic Lyme" was tossed aside via inadequate physical exams and medical records, failing to consider other diagnoses, and bulldozing ahead with inappropriate long-term antibiotics, adverse consequences be damned.
>
> Of course, if you think about it, substandard care and "Lyme literacy" would appear to go hand-in-hand. It is hard to imagine the "Lyme literate" doctor, who routinely ignores medical science in favor of unvalidated testing, makes repeated diagnoses of a fake disease, and orders unwarranted long-term antibiotics, otherwise delivering standard-of-care medical practice. As with the Cameron case, this offers a way forward to state medical boards hamstrung by laws designed to protect the misconduct that is "chronic Lyme" from disciplinary action."

34.     The foregoing statements are defamatory, knowingly false and are not predicated upon any findings or legal conclusions reached by the New York medical board. In fact, in support of the knowingly false and libelous statements articulated in the foregoing paragraph, paragraph

33 above, the defendants post nothing more than selective unproven allegations from the document titled "Statement of Charges" attached to the Consent order  and they falsely represent that the statements are in fact proof of misconduct in which the Plaintiff engaged with respect to specific patients. See exhibit "A" annexed hereto. These statements are false and calculated to cause harm to plaintiff's business.

35.    The defendants know and should have known that their statements are false and that the same were posted with reckless disregard for the truth and calculated to defame the plaintiff in his vocation and business and to cause harm to his business and reputation because, as they stated in their own post, the statement of charges contains nothing more than allegations which were not proven.

36.    The defendants knew and should have known at the time of the publication that (Exhibit "A" hereto) and at the time of its re publication on November 9, 2017 (Exhibit "B" hereto) that their statements and conclusions predicated upon allegations of the statement of charges are knowingly false simply because under New York law unproven allegations contained in the statement of charges are not findings of misconduct which would have enabled them to safely draw the defamatory conclusions and make the defamatory statements articulated in paragraph 33 above.

37.    The fact that the defendants knew and should have known that their libelous statements made in the posting as articulated in paragraph 33 above could not be predicated upon the unproven allegations of the statement of charges is contained in their own posting (Exhibit "A" hereto) which states that "the allegations in the state's Statement of Charges were never proven, as it was unnecessary to reach a decision on the factual issues once Cameron decided to settle".

38.     Indeed, the contested administrative process in New York and the initial pleading stages are governed by the New York regulation 10 NYCRR Sec. 51.1 (governing Notice of hearing and the content of the statement of charges) and 10 NYCRR Sec. 51. 5 (answer and responsive pleading). In the context of the administrative process, Dr. Cameron has to respond pursuant to the provisions of 10 NYCRR Sec. 51. 5  to the charges issued pursuant 10 NYCRR Sec. 51.1 or face default. In the underlying proceedings the Plaintiff formally denied all allegations of the Charges levied against him. See exhibit "D" hereto.

39.     Nonetheless this did not stop the defendants from posting that the unsubstantiated allegations in the statement of charges is proof of " how, in the view of the New York state medical authorities, Cameron exercised his "clinical judgment" and provided patients with "treatment options." Exhibit "A" hereto, 6th page.

40.     Following the foregoing statement on the sixth through eighth  page (Exhibit "A" hereto), the defendants make the following defamatory statement: "Apparently, New York's medical misconduct procedures do not require the physician charged to stipulate to any particular acts of misconduct as a condition of settling his case. Rather, as noted, Cameron simply stated he was unable to "successfully defend against at least one of the acts of misconduct alleged" and agreed to the imposition of sanctions. This means the allegations in the state's Statement of Charges were never proven, as it was unnecessary to reach a decision on the factual issues once Cameron decided to settle. **However, per the Office of Professional Medical Conduct's (OPMC) standard procedures, the allegations in the Statement of Charges were based on expert review of Cameron's patients' records and they remain uncontested by Cameron**".

41.     The post continues to state on the eighth page (Exhibit "A" hereto) that state's allegations, which according to the defendants' knowingly false statement or statement made with

reckless disregard for the truth, were not contested by Dr. Cameron,  were based on Cameron's

care of seven patients. According to the Statement of Charges, some of his more egregious actions

include:

Continuing to prescribe narcotics for a patient diagnosed with bipolar disorder and narcotic abuse two years after the patient had moved to another state.

Failing to follow up on previous diagnostic tests and symptoms indicative of multiple sclerosis, "thereby depriving the patient of an accurate diagnosis and years of effective therapy for her progressive disease."'

Failing to appropriately and timely evaluate a patient, who suffered from Parkinson's disease, when she complained of pain associated with a PICC line inserted at Cameron's direction for parenteral antibiotics, which itself was done without an appropriate physical examination or "clinical re-assessments for consideration of any alternative diagnoses and/or treatment."

Failing to consider "other infections or inflammatory processes" in a patient with a recent termination of pregnancy and diverticulitis, who had abnormal lab results, including abnormal liver function tests and an elevated sedimentation rate, and failure to order a CT scan of the abdomen and pelvis as well as additional blood testing'

42.    The defendants then gratuitously and falsely comment as follows on the ninth page

(Exhibit "A" hereto) : "The state wisely avoided specifically challenging Cameron's diagnosis of

his patients      with "chronic Lyme" or his treating "chronic Lyme" with long-term antibiotics. In

fact,    the term is never mentioned. In doing so, it circumvented the quagmire of arguing over

"different points of view" and concentrated on the fact that Cameron quite simply failed   his

patients by giving them substandard care, "chronic Lyme" or no "chronic Lyme." This strategy

also avoided any shield which might have been provided by New York's foolish   law  aimed  at

protecting "Lyme literate" doctors."

43.    The foregoing statements are knowingly false and are calculated to cause damage

to Plaintiff's business as they were represented to be  allegations which were not contested by Dr.

Cameron. The foregoing statements are further false and are calculated to cause damage to

Plaintiff's business  and as statement depicting the unsubstantiated allegations as professional

misconduct in which the plaintiff was engaged. The statements were posted with reckless disregard for the truth and were aimed at defaming the Plaintiff in his business and were posted with intent to cause harm to Plaintiff's business.

44.    The defendants should have investigated and should have known that each and every allegation of the Statement of Charges were denied in their entirety in Plaintiff's formal answer interposed to the charges in the administrative pleading process pursuant to 10 NYCRR Sec. 51.5. See exhibit "D" annexed hereto. Presenting the allegations made in the statement of charges as "uncontested" conclusions and "uncontested" recitations of medical misconduct by the New York authorities is a knowingly false statement or in the alternative a statement made with reckless disregard for the truth and it is defamatory and libelous in nature and aimed at damaging Plaintiff's business and reputation.

45.    The following statement made in the posting Exhibit "A" on the tenth page read in conjunction with the reposted statement made by the defendants that ""Lyme literate" doctors are scamming patients out of thousands of dollars with needless long-term antibiotics based on a fake diagnosis of "chronic Lyme" (Exhibit "C" hereto) amounts to libel and defamation of the plaintiff in his business and vocation and was posted with intent to cause the plaintiff harm in his business and vocation:

> Yet the fingerprints of "chronic Lyme" diagnosis and treatment show through loud and clear in the state's case. For each and every patient, Cameron was charged with:

- Repeatedly failing to take and/or note an adequate history of present illness.

- Repeatedly failing to perform and/or note an appropriate physical examination.

- Failing to appropriately construct a differential diagnosis and pursue a through diagnostic evaluation.

- Failing to maintain records accurately reflecting care and treatment rendered to the patient.

For six of the seven, he was charged with: Treating patients inappropriately with an ongoing and escalating antibiotic regimen without appropriate sequential physical examinations and clinical reassessments for consideration of any alternative diagnoses and/or treatment.

And for four of them, according to the state, Cameron failed to follow up in a timely fashion when the patient developed possible adverse reactions to therapy.

Two of the patients who presented with complaints of fatigue and pain had previous diagnoses and treatment for Lyme disease, 9 and 16 years earlier, fitting the "Lyme literate" notion that their current complaints are most certainly sequelae to inadequately-treated Lyme and cannot be attributed to other causes.

Reading between the lines, Cameron had only one tool, a hammer, so he saw every problem as a nail. The possibility that the patient might be suffering from something other than "chronic Lyme" was tossed aside via inadequate physical exams and medical records, failing to consider other diagnoses, and bulldozing ahead with inappropriate long-term antibiotics, adverse consequences be damned.

Of course, if you think about it, substandard care and "Lyme literacy" would appear to go hand-in-hand. It is hard to imagine the "Lyme literate" doctor, who routinely ignores medical science in favor of unvalidated testing, makes repeated diagnoses of a fake disease, and orders unwarranted long-term antibiotics, otherwise delivering standard-of-care medical practice. As with the Cameron case, this offers a way forward to state medical boards hamstrung by laws designed to protect the misconduct that is "chronic Lyme" from disciplinary action.

46.    The foregoing statements are knowingly false and were calculated to cause damages to plaintiff's business. They  were posted with reckless disregard for the truth and were aimed at defaming the Plaintiff in his business and reputation  and were posted with intent to cause harm to Plaintiff's business. The allegations of the statement of charges were specifically contested by Dr. Cameron and neither the consent order nor the stamen of charges annexed thereto "read between the lines" of anything as falsely asserted by the defendants in their post with intent to cause damage to plaintiff's business.

47.    The following statements are knowingly false and were calculated to cause damage to Plaintiff's business. They  were posted with reckless disregard for the truth and were aimed at

defaming the Plaintiff in his business and reputation were posted with intent to cause harm to Plaintiff's business. See Exhibit "A" on the third and fourth page.

Who is Daniel Cameron, MD?

Cameron is a solo practitioner in Mt. Kisco, NY, and board certified in internal medicine, but not fellowship-trained in infectious diseases and not board-certified in that sub-specialty. He also holds an MPH and describes himself as epidemiologist. According to his     website, he: is a nationally recognized leader for his expertise in the diagnosis and treatment of Lyme disease and other tick-borne illnesses.    That is partially true. He is a "recognized leader" among those who consider "chronic Lyme" a real disease and who treat it with long-term antibiotics, sometimes for months to years. **He is not a "recognized leader" among board-certified infectious diseases doctors and other experts who agree that "chronic Lyme" is not a real disease and who rely on well-conducted trials showing that long-term antibiotics do not substantially improve the outcome for patients diagnosed with so-called "chronic Lyme."**

48.     The part of the posting which is accentuated in bold black letters is knowingly false, was posted with reckless disregard for the truth and was further posted for the purposes of defaming the Plaintiff in his vocation and office and for the further purposes for causing damage to his business. The Plaintiff is a respected scientist in the entire Lyme disease community and the defendants have no basis to state that he is not recognized leader "among board-certified infectious diseases doctors and other experts who agree that "chronic Lyme" is not a real disease and who rely on well-conducted trials showing that long-term antibiotics do not substantially improve the outcome for patients diagnosed with so-called "chronic Lyme.". The foregoing statements are false and were made with reckless disregard for the truth and were calculated to cause harm to plaintiff's business. While physicians may differ in their views in their diagnosis and treatment of Lyme disease, the statement that other unnamed physicians who disagree with the diagnosis and treatment of Lyme  disease do not view Dr. Cameron as a leader in his field is disparaging, libelous and aimed at causing damage to Plaintiff's reputation in his business and vocation.

## APPLICABLE STATUTE OF LIMITATIONS.

49.     The New York statute of limitations on libel actions is one year from its initial publication CPLR 215(3) or one year form the republication of the defamatory article.

50.     Under New York law republication, retriggering the period of limitations, occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely "a delayed circulation of the original edition". The justification for this exception to the single publication rule is that the subsequent publication is intended to and actually reaches a new audience. Thus, for example, repetition of a defamatory statement in a later edition of a book, magazine    or    newspaper    gives    rise    to    a    new    cause    of    action.

51.     In the present case, the defamatory publication took place on June 22, 2017 (Exhibit "A"  hereto)  https://sciencebasedmedicine.org/chronic-lyme-vip-daniel-cameron-disciplined-by-new-york-medical-authorities/.

52.     The republication took place in its entirety on November 9, 2017 upon a separate aggregate publication from the original, on a different occasion, which is not merely "a delayed circulation of the original edition" through the link reading "David Cameron, M.D.  Exhibit "B" hereto    and    https://sciencebasedmedicine.org/another-chronic-lyme-vip-disciplined-by-ny-medical-authorities-bernard-raxlen/.

53.     This action is commenced within one year from the republication of the initial defamatory statement.

54.     Moreover, the posting act of the defamatory publication was authored and performed by defendant Bellamy with the participation of the other defendants as alleged in this complaint in the state of Florida. Because the offending act of posting the libelous statement was

authored and took place in the state of Florida, the Florida statute of limitations on actions for libel should be applied by the New York Courts.

55.     The Florida statute of limitations on libel actions is two years from the posting of the libelous statement. Fla. Stat. § 95.11(4).

56.      This action is commenced within the two years applicable Florida statute of limitations.


### AS AND FOR A FIRST CAUSE OF ACTION –
### MONETARY DAMAGES AND PUNITIVE DAMAGES
### FOR LIBEL AND DEFAMATION.

57.     Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if the same was set forth at length herein

58.     Defendants' statements contained in the published and republished posting (Exhibit "A" and "B" hereto) as specifically articulated above, are false and defamatory and were calculated to cause harm to and interfere with Plaintiff's business . The statements and postings constitute libel per se because the statements were calculated and tend to injure the Plaintiff in his business and profession and to cause harm to his business and profession.

59.     As a proximate result of defendants' publication and republication of the libelous statements identified above,  the plaintiff suffered damages to his business since the time of posting a reposting of the libelous statement through the date of this complaint exceeding $1,000,000.00.

60.     As a proximate result of defendants' libelous posting to the world-wide audience as alleged hereinabove, the Plaintiff continues to suffer damages to his reputation and to his business.

61.     Damages in cases involving defamation per se are assumed to be attributable to the defamatory posting and no proof of special damages is necessary.

62.     For all of the above referenced reasons, Plaintiff requests that he be awarded judgment against each and one of the defendants jointly and severally in an amount to be proven at the time of trial but believed to be no less than $1,000,000.00.

63.     In addition, the Plaintiff alleges that defendants' statements set forth hereinabove and in Exhibit "A" and "D" hereto to the effect that the Plaintiff is a "Lyme literate guru" is "scamming patients out of thousands of dollars with needless long-term antibiotics based on a fake diagnosis of "chronic Lyme" and the statement made to the effect that the allegations of the Statement of Charges "remain uncontested were wonton and malicious and made with reckless disregard for their falsity and for the effect which the same have on Plaintiff's business and reputation.

64.     For all of the foregoing reasons the Plaintiff demands the award of punitive damages in an amount to be determined at the time of trial but believed to be in excess of jurisdictional threshold of $75,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION – INJUNCTION AND PRELIMINARY INJUNCTION.

65.     Plaintiff repeats reiterates and realleges each and every allegation set forth above in this complaint with the same force and effect as if the same is set forth at length herein.

67.     This Court has to apply the substantive law of the State of New York while considering the claim for injunction and preliminary injunction.

68.     An injunction will lie to restrain libel when the publication is made as part and parcel of a course of conduct deliberately carried on furthering a fraudulent or unlawful purpose. An injunction will lie to prevent further damages to a business where defendant's statements are calculated to injure plaintiffs' business and constitute an unjustified interference for which the preliminary injunction is justified.

69.     In the present case, for all of the reasons articulated hereinabove in this complaint, defendants' statements contained in the libelous posting (Exhibit "A") and reporting (Exhibit "B") of the defamatory article were calculated to cause damage to Plaintiff's business which is predicated exclusively upon the diagnosis and treatment of Lyme disease.

70.     For all of the foregoing reasons, New York Jurisprudence recognizes that in the case of libelous statements aimed at and calculated to cause injury to one's business merit the issuance of an injunction and that such injunction does not offend the First Amendment Freedom of Speech.

71.     For all of the reasons set forth hereinabove, the plaintiff is seeking a permanent injunction barring the defendants from further posting and reposting in the future the defamatory statements articulated above in this complaint and contained in Exhibit "A" annexed hereto.

72.     The Plaintiff is also seeking a preliminary injunction pursuant to Fed. R. Civ. Proc 65 pending the hearing and determination of Plaintiff's claims for damages, barring the defendants, their employees agents and assigns from continuing to post the libelous article annexed hereto as Exhibit "A" on the grounds that the same is calculated to cause harm to Plaintiff's business and on the grounds that the same has been and continue to cause actual damages to plaintiff's business and reputation.

73.     The Plaintiff will file a separate motion for a preliminary injunction seeking the same relief from the court.

WHEREFORE, the Plaintiff demands judgment against the defendant jointly and severally as follows: (1) In the First Cause of Action – monetary compensatory and punitive damages in an amount to be determined at the time of trial but presently believed to be in excess of the jurisdictional limitation $75,000.00; (2) in the Second Cause of action ad injunction and a preliminary injunction barring the defendants, their servants from posting continuing to post the libelous publication (Exhibit "A" hereto) on the grounds that the same is calculated to cause harm to and interfere with Plaintiff's business.

Dated: November 8, 2018

Attorney for the Petitioner

/s/Jacques G. Simon
Jacques G. Simon, Esq.,
SDNY Bar No.: JS 9212
100 Jericho Quadrangle Suite 208
Jericho, NY 11753
Phone: (516)378-8400
Fax: (516)378-2700
Email: jgs@jacquessimon.com
jgs@jacquessimon.com

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury with respect to his claims for monetary damages.

Dated: November 8, 2018

Attorney for the Petitioner

/s/Jacques G. Simon
Jacques G. Simon, Esq.,
SDNY Bar No.: JS 9212
100 Jericho Quadrangle Suite 208
Jericho, NY 11753
Phone: (516)378-8400
Fax: (516)378-2700
Email: jgs@jacquessimon.com
jgs@jacquessimon.com

## **VERIFICATION**

STATE OF NEW YORK          )
                                         )s.s.:
COUNTY OF WESCHESTER     )

DANIEL CAMERON M.D. being duly sworn deposes and says:

1.      I am the Plaintiff in the above captioned action, am over 18 years of age and I reside in Westchester County, New York.

2.      I have read the above Verified Complaint and the attached exhibits and know the facts therein to be true except for those stated upon information and belief and as to those I believe them to be true.  The source of my information are the documents in the case file which I have reviewed, the exhibits annexed to the complaint and my personal knowledge of all of the facts stated in the above Verified Complaint.

Daniel Cameron M.D.

On this 7 day of November, 2018 before me came Daniel Cameron M.D. to me known and known to me to be the individual who executed the foregoing instrument, was administered a notary oath and executed the foregoing instrument before me.

Dated: November  7 , 2018

Sworn to before me this 7
day of November, 2018

Notary Public State of New York

Affixed Seal or Notary Stamp:

FRANCA D DUSOVIC
Notary Public - State of New York
NO. 01DU6143207
Qualified in Putnam County
My Commission Expires Apr 3, 2022

FRANCA D DUSOVIC
Notary Public - State of New York
NO. 01DU6143207
Qualified in Putnam County
My Commission Expires Apr 3, 2022