UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

DANIEL CAMERON M.D.                                    :
                                                       :        Case No.: 7:18-cv-
                               Plaintiff,              :        10395(VB)
                                                       :
             -against-                                 :
                                                       :
JANN BELLAMY M.D., DAVID H. GORSKI M.D.,               :
STEVEN NOVELLA M.D., KIMBALL C. ATWOOD IV              :
M.D., HARRIET HALL M.D., MARK A. CRISLIP M.D.,         :
                                                       :
                               Defendants.             :

------------------------------------------------------------------ X


**JANN BELLAMY i/s/h/a JANN BELLAMY M.D.'S MEMORANDUM OF LAW IN
SUPPORT OF THE MOTION TO DISMISS THE AMENDED COMPLAINT**

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Sasha R. Grandison (SG1023)
*Attorneys for Jann Bellamy i/s/h/a Jann
Bellamy M.D.*
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................ ii - iv

Preliminary Statement ............................................................. 1

Factual Background................................................................. 2

Argument ........................................................................... 3

    Point I. New York's Statute of Limitations is Applicable and Plaintiff's
    Complaint Based Upon the Cameron Article is Time Barred ................... 3

    Point II. The Raxlen Article is not an Actionable Republication and Does Not
    Contain Defamatory Statements Regarding Dr. Cameron ..................... 4

    Point III. Plaintiff's Complaint Must be Dismissed for Lack of Personal
    Jurisdiction ..................................................................... 17

    Point IV. The Complaint Must be Dismissed Pursuant to Florida's
    anti-SLAPP Law ................................................................. 21

    Point V. The Complaint Must be Dismissed Pursuant to Section 74 of the New
    York Civil Rights Law ......................................................... 22

Conclusion ......................................................................... 23

9682678v.1

## TABLE OF AUTHORITIES

**Rules and Statutes**                                                                        **Page**

Fed. R. Civ. P. 12(b) ……………………………………….....    1, 3, 17

N.Y. CPLR § 215 ……………………………………………    3, 4

N.Y. CPLR § 202 ……………………………………………    4

N.Y. CPLR § 302 ……………………………………………    17, 18

N.Y. Civ. Rights Law § 74 …………………………………    2, 22

Fla. Stat. § 768.295 …………………………………………    2, 21, 22

**Cases**

Abbott v. Harris Publications, Inc., U.S. Dist. Lexis 18990 (S.D.N.Y. 1998)………..    7, 11

Adelson v. Harris, 973 F.Supp.2d 467, 481 (S.D.N.Y. 2013) …………………………    3, 17

Armstrong v. Simon & Schuster, 85 N.Y.2d 373, 380, 625 N.Y.S.2d 477 (1995)……    8

Best Van lines, Inc. v. Walker, 490 F.3d 239, 242 (2nd Cir. 2007) …………………    17 - 21

Biro v. Conde Nast, 884 F. Supp.2d 441, 460 (S.D.N.Y. 2012)………………………    12, 15

Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015)………………………………    15

Chau v. Lewis, 771 F.3d 118, 127 (2d Cir. 2014)………………………………………    6 - 8, 10, 13

Cromer Finance Ltd. v. Berger, 137 F. Supp.2d 452, 467 (S.D.N.Y. 2001) ………..    3

Davis v. Costa-Gavras, 580 F.Supp.1082, 1086 (S.D.N.Y 1984) ……...……………    4

Easton v Public Citizens, Inc.. U.S. Dist. Lexis 18690 (S.D.N.Y 1991)……………    22

Egiazaryan v. Zalmayev, 880 F. Supp. 2d 494, 503-4 (S.D.N.Y. 2012)……………    7

Evans v. Hawker-Siddeley Aviation, Ltd., 482 F. Supp. 547, 549 (S.D.N.Y. 1979)…    4

Firth v. State of N.Y., 98 N.Y.2d 365, 369, 747 N.Y.S.2d 69 (2002) …………………    5

Fischer v. Stiglitz, 2016 U.S. Dist. Lexis 74842 (S.D.N.Y.) …………………………    17, 18, 21

9682678v.1

<u>Fuji Photo Film U.S.A., Inc., v, McNulty</u>, 669 F.Supp.2d 405, 411, (S.D.N.Y. 2009)...     22

<u>Galland v. Johnston</u>, U.S. Dist. Lexis 34960 (S.D.N.Y. 2015)............................     7

<u>Gilman v. Marsh & McLennan Companies, Inc.</u>, 868 F. Supp.2d 118, 136
(S.D.N.Y. 2012) ................................................................................     4

<u>Goforth v. Avemco Life Ins. Co.</u>, 368 F.2d 25, 28 (4th Cir. 1966) ......................     16

<u>Gross v. New York Times Co.</u>, 82 N.Y.2d 146, 603 N.Y.S.2d 813 (1993)..............     7, 11, 13

<u>Hosseinzadeh v. Klein</u>, 276 F. Supp.3d 34, 44 (S.D.N.Y. 2017).........................     8

<u>In re Philadelphia Newspapers, LLC</u>, 690 F.3d 161, 174-175 (3d Cir. 2012) ..........     16, 17

<u>Ins. Co. of N. Am. v. ABB Power Generation, Inc.</u>, 925 F. Supp. 1053,
1059 (S.D.N.Y. 1996) .........................................................................     4

<u>Kirch v. Liberty Media Group</u>, 449 F.3d 388, 398 (2d Cir. 2006).......................     6

<u>Koch v. Christie's International PLC</u>, 699 F.3d 141 (2d Cir. 2012) .....................     4

<u>Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.</u> 77 N.Y.2d 28,
563 N.Y.S.2d 739 (1990)......................................................................     21

<u>Legros v. Irving</u>, 38 A.D.2d 53, 327 N.Y.S.2d 371 (1st Dept. 1971) ....................     20

<u>Mirage Entertainment, Inc. v. FEG Entretenimentos S.A.</u>, 326 F. Supp.3d 26, 39,
(S.D.N.Y. 2018) ...............................................................................     17

<u>Portfolio Recovery v. King</u>, 14 N.Y.3d 410, 901 N.Y.S.2d 575 (2010) .................     4

<u>Rosado v. Bondi</u>, U.S. Dist. Lexis 178586 (S.D.N.Y. 2017)................. ............     21

<u>Rubenstein v. Transit Workers' Union of Greater New York</u>, U.S. Dist. Lexis 19969
(S.D.N.Y. 2005)..............................................................................     11, 14, 15

<u>Small Business Bodyguard v. House of Moxie</u>, 230 F.Supp.3d 290, 311
(S.D.N.Y. 2017)...............................................................................     13

<u>Sovik v. Healing Networking</u>, 244 A.D.2d 985, 665 N.Y.S.2d 997 (4th Dept. 1997)..     20

<u>Steinhilber v. Alphonse</u>, 68 N.Y.2d 283, 508 N.Y.S.2d 901 (1983).....................     7

<u>Stephanov v. Down Jones & Co., Inc.</u>, 120 A.D.3d 28, 987 N.Y.S.2d 37 (1st Dept. 2014)     6

<u>Sterling National Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors</u>,
510 F.2d 870, 873 (2d Cir. 1975) ...........................................................     18

Streslin v. Barrett, 36 A.D.2d 923, 320 N.Y.S.2d 885 (1st Dept. 1971) ................. 20

Tannerite Sports, LLC, NBC Universal Media LLC, 135 F.Supp.3d 219, 230
(S.D.N.Y. 2015)............................................................................... 18, 19

Weiner v. Doubleday & Co., 74 N.Y.2d 586, 593, 550 N.Y.S.2d 251 (1989).......... 8

Yanni v. Variety, Inc., 48 A.D.2d 803, 369 N.Y.S.2d 448 (1st Dept. 1975) ........... 20

**Other Authorities**

Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/literate   9

9682678v.1

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted with the Declaration in Support of Sasha R. Grandison, Esq., the Declaration of Jann Bellamy, and the exhibits annexed thereto in support of JANN BELLAMY i/s/h/a JANN BELLAMY, M.D.'s (hereinafter "Bellamy") motion pursuant to Fed. R. Civ. P. 12(b)(2) and (6) seeking dismissal of the Amended Complaint, for attorney's fees and costs, and for such other and further relief as this Court deems just and proper.

This action stems from alleged defamatory statements made about plaintiff DANIEL CAMERON M.D. (hereinafter "Dr. Cameron") in an article entitled ""Chronic Lyme" VIP Daniel Cameron disciplined by New York medical authorities" (hereinafter the "Cameron Article") authored by Bellamy and published on June 22, 2017 on the website sciencebasedmedicine.org (hereinafter "subject website"), as well as an alleged republication of the alleged defamatory statements in an article entitled "Another "Chronic Lyme" VIP disciplined by NY Medical authorities: Bernard Raxlen" (hereinafter the "Raxlen Article") authored by Bellamy and published on the same website on November 9, 2017.

As is set forth more fully below, the Amended Complaint must be dismissed in as much it relies upon the alleged defamatory statements in the Cameron Article, as it is time barred pursuant to New York's one-year statute of limitations. The Amended Complaint must also be dismissed based upon the Raxlen Article, as the Raxlen Article is not an actionable republication, it does not contain defamatory statements about Dr. Cameron, and plaintiff failed to demonstrate actual malice.

The Amended Complaint must also be dismissed, as this Court does not have personal jurisdiction over Bellamy pursuant to New York's long-arm statute. Bellamy's alleged defamatory statements, which were drafted and published on a website in Florida are insufficient to establish this Court's jurisdiction over Bellamy. The Amended Complaint must also be dismissed pursuant

1

to Florida's anti-SLAPP law, and the statements are privileged as a fair report pursuant to Section 74 of New York Civil Rights Law.

## FACTUAL BACKGROUND

Bellamy is a volunteer contributor on the subject website and on June 22, 2017, Bellamy published the Cameron Article on the subject website. (See Exhibit "A" of the Bellamy declaration). The Cameron Article discusses the New York Department of Health, State Board for Professional Medical Conduct's (hereinafter "Board") charges against plaintiff in a Statement of Charges dated April 27, 2017. (See Exhibit "B" of the Bellamy declaration). The Cameron Article also discusses a Consent Agreement and Order entered into by plaintiff and the Board in regard to the charges alleged dated June 15, 2017. (Id.). The Statement of Charges and the Consent Agreement and Order are public record.

On November 9, 2017, Bellamy published the Raxlen Article on the subject website. (See Exhibit "C" of the Bellamy declaration). The Raxlen Article contains a hyperlink to the Cameron Article. (Id.).

On March 15, 2018, Bellamy published an article on the subject website entitled "More Political Science: Proposed laws protect "Lyme literate" doctors from discipline" (hereinafter "March 2018 Article"). (See Exhibit "D" of the Bellamy declaration).

On November 8, 2018, plaintiff commenced the instant action alleging causes of action for libel, defamation, and for an injunction and preliminary injunction against all defendants. (See the Complaint as Dkt. No. 1).

In or about January 2019, Bellamy, as well as the other co-defendants filed motions to dismiss the Complaint. (See Bellamy's motion to dismiss as Dkt. Nos. 64, 65, and 66).

Pursuant to an Order dated January 10, 2019, the Hon. Vincent L. Briccetti directed plaintiff to notify the Court and the parties whether he intends to file an Amended Complaint or rely upon the original Complaint to oppose the defendants' various motions to dismiss. (See the January 10, 2019 Order as Dkt. No. 55).

On or about February 6, 2019, plaintiff filed a First Amended Complaint. (See the First Amended Complaint as Dkt. No. 73). Defendants were granted an extension in time to respond to the Amended Complaint up to March 13, 2019. (See the Court Order dated February 14, 2019 as Dkt. No. 78). Therefore, the instant motion is timely.

## ARGUMENT

Pursuant to Rule 12(b)(6), an action may be dismissed "if it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." Cromer Finance Ltd. v. Berger, 137 F. Supp.2d 452, 467 (S.D.N.Y. 2001). The court must accept all of the factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff. "However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Adelson v. Harris, 973 F.Supp.2d 467, 481 (S.D.N.Y. 2013).

**Point I.      New York's Statute of Limitations is Applicable and Plaintiff's Complaint Based Upon the Cameron Article is Time Barred**

Plaintiff alleges in the Amended Complaint that both the New York and Florida statutes of limitations for libel must be applied to determine whether plaintiff's action is time barred. (See ¶129-139 of the Amended Complaint as Dkt. No. 73). Contrary to plaintiff's assertion, only New York's statute of limitations is applicable. Pursuant to CPLR Section 215(3), an action to recover

3

damages for libel and slander must be commenced within one year of the initial publication of the alleged defamatory statements. N.Y. CPLR § 215(3).

In diversity cases, the Court applies the choice of law rules of the forum state to determine which state's substantive law applies. See Davis v. Costa-Gavras, 580 F.Supp.1082, 1086 (S.D.N.Y 1984). Matters of procedure are governed by the forum jurisdiction. See Gilman v. Marsh & McLennan Companies, Inc., 868 F. Supp.2d 118, 136 (S.D.N.Y. 2012) citing Ins. Co. of N. Am. v. ABB Power Generation, Inc., 925 F. Supp. 1053, 1059 (S.D.N.Y. 1996). "Choice of law provisions typically apply to only substantive issues, and statutes of limitations are considered procedural because they are deemed as pertaining to the remedy rather than the right." Portfolio Recovery v. King, 14 N.Y.3d 410, 901 N.Y.S.2d 575 (2010). internal citations omitted.

Even under New York's borrowing statute pursuant to CPLR Section 202, New York's statute of limitations is applicable. Section 202 of the CPLR states that when a cause of action arises outside of New York, the shorter statute of limitations of New York or the other state is applicable. N.Y. CPLR § 202; See Evans v. Hawker-Siddeley Aviation, Ltd., 482 F. Supp. 547, 549 (S.D.N.Y. 1979).

Plaintiff alleges defamatory statements were made in the Cameron Article published on June 22, 2017. Pursuant to CPLR Section 215(3), the statute of limitations expired one year after June 22, 2017. Plaintiff did not commence the instant action until November 8, 2018. Therefore, plaintiff's action based upon the Cameron Article published on June 22, 2017 is time barred. See Koch v. Christie's International PLC, 699 F.3d 141 (2d Cir. 2012).

### Point II. The Raxlen Article is not an Actionable Republication and Does Not Contain Defamatory Statements Regarding Dr. Cameron

The Raxlen Article was published on the subject website on November 9, 2017. In essence, plaintiff alleges in the Amended Complaint that the inclusion of a hyperlink in the Raxlen Article

4

to the Cameron Article, coupled with statements made in the Raxlen Article constitute a republication of the Cameron Article, and that independent statements in the Raxlen Article defamed Dr. Cameron. The Raxlen Article is not an actionable republication, as the Raxlen Article does not contain defamatory statements regarding Dr. Cameron, and the inclusion of the hyperlink to the Cameron Article does not amount to an actionable republication pursuant to well established case law.

New York applies the "single publication rule" that states that the statute of limitations for a defamation claim accrues from the first publication of the alleged defamatory statement. See Firth v. State of N.Y., 98 N.Y.2d 365, 369, 747 N.Y.S.2d 69 (2002). In New York, the "single publication rule" applies to alleged defamatory statements made on the internet. Id. at 370. "Republication, retriggering the period of limitations, occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely a delayed circulation of the original edition." Id. at 371.

It is important to note that plaintiff repeatedly inaccurately refers to the March 2018 Article as an article that was published *prior to* the Cameron and Raxlen Articles. (See ¶¶ 70-74 of the Amended Complaint as Dkt. No. 73). Plaintiff also repeatedly inaccurately states that the March 2018 Article was published on March 15, 2017 or March 18, 2018. (Id.). It simply cannot be disputed that the March 2018 Article was published on March 15, 2018, five months **after** the Raxlen Article. (See Ex. "D" of the Bellamy declaration).

This timeline is important, as plaintiff argues that the *alleged republication* of the sentence: "Lyme literate" doctors are scamming patients out of thousands of dollars with needless long-term antibiotics based on a fake diagnosis of "chronic Lyme"." contained within the March 2018 Article, and inclusion of Dr. Cameron's name and a hyperlink in the Raxlen Article to the Cameron

5

Article, have the "net effect" of defaming Dr. Cameron. <u>Contrary to plaintiff's allegations, neither the Cameron Article nor the Raxlen Article contain any reference to the March 2018 Article nor do they contain any links to the March 2018 Article, as the March 2018 Article did not exist</u>. (<u>Id</u>.). It simply belies logic that a statement that had not yet been published, could then be republished in the Raxlen Article, and in conjunction with statements made in the Raxlen Article, defame Dr. Cameron. Therefore, plaintiff's defamation claim pertaining to the Raxlen Article based upon the aforementioned sentence in the March 2018 Article must be dismissed.

A.    The Statements in the Raxlen Article are Not Defamatory

Defamation is the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." <u>Stephanov v. Down Jones & Co., Inc.</u>, 120 A.D.3d 28, 34, 987 N.Y.S.2d 37 (1st Dept. 2014). To be actionable as defamation, a statement "must do more than cause discomfort or affront; the statement is measured not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes odious or despicable characterizations to its subject." <u>Id</u>. at 127.

To state a claim for libel, plaintiff must establish the following elements: (1) a written defamatory factual statement of and concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability. <u>See</u> <u>Chau v. Lewis</u>, 771 F.3d 118, 127 (2d Cir. 2014).

It is well established law that "a plaintiff cannot sustain a libel claim if the alleged defamatory statement is not "of and concerning" the plaintiff but rather only speaks about a group of which the plaintiff is a member." <u>Chau</u>, 771 F.3d at 129 *citing* <u>Kirch v. Liberty Media Group</u>, 449 F.3d 388, 398 (2d Cir. 2006).

6

Under New York law, only statements of fact are actionable as defamation or libel, as opposed to an opinion. Id. at 128. A statement is more likely to be characterized as fact when it is understood by a reader to have a precise, unambiguous and definite meaning that can be characterized as true or false. Id. at 128-9; Steinhilber v. Alphonse, 68 N.Y.2d 283, 508 N.Y.S.2d 901 (1983). Even if a statement can be proven as true or false, no legal harm will be found to be done when "the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel". Egiazaryan v. Zalmayev, 880 F. Supp. 2d 494, 503-4 (S.D.N.Y. 2012). Whether a statement is a fact or opinion is a question of law to be decided by the Court. See Chau, 771 F.3d at 129; Galland v. Johnston, U.S. Dist. Lexis 34960 (S.D.N.Y. 2015).

The Court must consider three factors to determine whether a statement is an opinion: "(1) whether the challenged statements have a precise and readily understood meaning; (2) whether the statements are susceptible of being proven false; and (3) whether the context signals to the reader that the statements are more likely to be expressions of opinion rather than fact." Id. "It is settled rule that expressions of an opinion false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions." Steinhilber, 68 N.Y.2 at 286.

If a statement is an opinion, the court must determine whether it is a "pure opinion", which is "a statement of opinion which is accompanied by a recitation of the facts upon which or does not imply that it is based on undisclosed facts", or a "mixed opinion" that "does imply a basis in undisclosed facts, or facts known only to the author". Id. at 129; Abbott v. Harris Publications, Inc., U.S. Dist. Lexis 18990 (S.D.N.Y. 1998); Steinhilber, 68 N.Y.2d at 289-90; Gross v. New York Times Co., 82 N.Y.2d 146, 603 N.Y.S.2d 813 (1993).

7

"Where a plaintiff alleges that statements are false and defamatory, the legal question for the court on a motion to dismiss is whether the contested statements are reasonably susceptible of a defamatory connotation." <u>Armstrong v. Simon & Schuster</u>, 85 N.Y.2d 373, 380, 625 N.Y.S.2d 477 (1995); <u>See</u> <u>Chau</u>, 771 F.3d at 127. In analyzing whether a statement is defamatory, the Court must consider the statements in context, "and give the language a natural reading rather than strain to read it as mildly as possible at one extreme, or to find defamatory innuendo at the other." <u>Weiner v. Doubleday & Co.</u>, 74 N.Y.2d 586, 593, 550 N.Y.S.2d 251 (1989).

Truth is an absolute, unqualified defense to a defamation claim. <u>See</u> <u>Hosseinzadeh v. Klein</u>, 276 F. Supp.3d 34, 44 (S.D.N.Y. 2017). "It is well-established that a statement need not be completely true, but can be substantially true, as when the overall gist or substance of the challenged statement is true." <u>Id.</u>; <u>Chau</u>, 771 F.3d at 129.

The statements relied upon by plaintiff in the Amended Complaint to support his defamation cause of action are not defamatory, as the statements are either not "of and concerning plaintiff", and/or are non-actionable opinions. It is undisputed that the only statement that contains Dr. Cameron's name in the Raxlen Article is the following sentence, which contains a hyperlink to the Cameron Article:

> Bernard Raxlen, MD, who devotes more than 90% of his practice to the treatment of so-called "chronic Lyme" disease, is on a three-year probation imposed by the New York State Board for Professional Medical Conduct (BMPC). Raxlen agreed to probation and a lengthy list of practice requirements last month following allegations, filed in September, of negligence, incompetence, gross negligence, gross incompetence, and failure to maintain adequate patient records. In doing so, he becomes the second "Lyme literate" VIP disciplined by the NY medical authorities this year. **Based on similar charges of professional misconduct, <u>David Cameron, MD</u>, was also put on probation with numerous practice restrictions in June.**

(<u>See</u> pg. 3 of Ex. "C" of the Bellamy declaration).

8

Plaintiff goes through great efforts in the Amended Complaint, which doubles as a de facto opposition to defendants' prior motions to dismiss, arguing that the phrase "Lyme literate" is defamatory, and that since the aforementioned excerpt from the Raxlen Article appears to suggest that Dr. Cameron is a "Lyme literate" doctor, any reference to a Lyme literate doctor in the Raxlen Article, impliedly refers to Dr. Cameron as well.

One of the common definitions of literate is "having knowledge or competence". See Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/literate. The only fair and natural reading of the designation as a "Lyme literate" physician in context with the remainder of the Raxlen Article is a physician that is capable of treating Lyme disease, and what Bellamy opines is an invalid diagnosis, "chronic-Lyme".

Under the section of the Raxlen Article unmistakably entitled "Who is Bernard Raxlen, MD?" is the following paragraph:

> **"Lyme literate" physicians like Raxlen have fabricated a disease they call "chronic Lyme", which they regularly "diagnose" and treat with long-term antibiotics, sometimes for months to years."** Board-certified infectious diseases doctors and other "conventional" physicians all agree that "chronic Lyme" is not a valid diagnosis and rely on well-conducted trials showing that long-term antibiotics do not substantially improve the outcome for patients diagnosed with so-called "chronic-Lyme". Long-term antibiotics can, in fact, result in serious harm, including death, a subject our good friend Orac covered recently over on Respectful Insolence. **Orac's post nicely summarizes the difference between real Lyme disease and "chronic Lyme", "a prototypical fake medical diagnosis,"** and the dangers of long-term antibiotics, as have posts on SMB, here, here, here, and here.

(See pg. 5 of Ex. "C" of the Bellamy declaration). The above paragraph contains five hyperlinks to articles published by physicians regarding the topic of "chronic Lyme" and the long term use of antibiotics. (Id.).

9

Plaintiff alleges that the statements that "Lyme literate physicians like Raxlen have fabricated a disease they call chronic Lyme" and, that there is another article that "summarize[s] the difference between real Lyme disease and "chronic Lyme", a "prototypical fake medical diagnosis" are defamatory to Dr. Cameron. Yet, these alleged defamatory statements only specifically reference *Dr. Raxlen* and are under the *sub-heading pertaining to a description of Dr. Raxlen and his alleged practice only.* There is no mention of Dr. Cameron in any portion of this sub-heading in the Raxlen Article.

More importantly, the aforementioned statements describe the conduct of some "Lyme literate" physicians based upon the vast amount of research specifically referenced and cited by Bellamy throughout the Raxlen Article. Therefore, the statements are not "of and concerning plaintiff", but pertain to "Lyme literate" physicians in general. See Chau, 771 F.3d at 129 (holding that although the plaintiff was described in the alleged defamatory book as a CDO manager, statements about CDO managers were not "of and concerning" the plaintiff, as the statements were solely about the group of managers, not the plaintiff specifically).

The aforementioned statements are also non-actionable as statements of pure opinion. The statements are accompanied by a recitation of information upon which the statements are based. Bellamy goes through great effort to cite various sources with hyperlinks to the sources throughout the article that discuss the diagnosis of "chronic Lyme" and the harm in using antibiotic on a long-term basis. (See Ex. "C" of the Bellamy declaration). Specifically, the article includes references and in-text hyperlinks to, amongst many others, the following articles:

10

- A Centers for Disease Control and Prevention (hereinafter "CDC") article dated June 16, 2017 entitled "Serious Bacterial Infections Acquired During Treatment of Patients Given a Diagnosis of Chronic Lyme Disease"[1];

- An abstract for an article published in the Journal of Medical Ethics dated November 21, 2010 entitled "Scientific evidence and best patient care practices should guide the ethics of Lyme disease activism"[2];

- A CDC post entitled "Lyme Disease Post-treatment Lyme disease syndrome"[3]; and

- An article dated March 31, 2016 published in the New England Journal of Medicine entitled "Time for a Different Approach to Lyme Disease and Long-Term Symptoms"[4].

(See the Grandison declaration).

Based upon the various sources and information referenced, cited, and linked in the Raxlen Article, Bellamy's statements that "chronic Lyme" is a made-up or fabricated diagnosis are opinions based upon the disclosed information and therefore, not actionable. See Abbott, (holding that statements of opinion that are accompanied by a recitation of supporting facts or that do not simply imply the existence of such facts are not actionable as defamation); Gross, 82 N.Y.2d 146, (holding that a proffered hypothesis that is offered with a full recitation of the facts on which it is based is readily understood as conjecture); Rubenstein v. Transit Workers' Union of Greater New York, U.S. Dist. Lexis 19969 (S.D.N.Y. 2005) (holding that statements that the plaintiff "endorsed and rewarded a confessed bigot", desecrated an organization's achievements in the areas of human

---

[1] Notably, the CDC article describes "Lyme literate" doctors as "practitioners who might identify themselves as Lyme disease specialists or from complementary and alternative medicine clinics, where they receive a diagnosis of chronic Lyme disease." (Please see Exhibit "A" of the Grandison declaration).

[2] The abstract of the article indicates the article discusses the 2008 agreement between the Infectious Diseases Society of America (hereinafter "IDSA") and the Connecticut Attorney General in regard to the 2006 IDSA treatment guideline for Lyme disease. The authors argue in support of an evidence-based approach to caring for patients and the treatment of Lyme disease. (Please see Exhibit "B" of the Grandison declaration).

[3] The CDC post details that experts in the medical field do not support the use of the term "chronic Lyme disease", and that studies performed by the National Institute of Health have found that patients treated with long-term antibiotics developed serious complications and did not have a better prognosis than patients treated with placebo. (Please see Exhibit "C" of the Grandison declaration).

[4] Discussed a medical trial that revealed that the use of long-term antibiotics to treat Lyme disease yielded no additional benefit over the use of placebo, and describes the diagnosis of "chronic Lyme disease" is nebulous. (Please see Exhibit "D" of the Grandison declaration).

11

dignity and civil rights, and irreparably damaged an organization's credibility were not actionable as pure opinions, because the author attached to the alleged defamatory letter a copy of the decision, as well as included excerpts of the decision in the alleged defamatory letter upon which his statements were based).

In addition, the statements in the Raxlen Article in regard to "chronic-Lyme" as a fabricated diagnosis are opinions, as the statements cannot be proven false. See Biro v. Conde Nast, 883 F. Supp.2d 441, 460 (S.D.N.Y. 2012) (a "statement of opinion is not an assertion of fact that can be proved false, and "[a]n assertion that cannot be proved false cannot be held libelous."). As set forth in the Raxlen Article, while a large portion of the medical community does not consider "chronic-Lyme" as a valid diagnosis, there are physicians and medical organizations that consider "chronic-Lyme" a valid diagnosis. (See Ex. "C" of the Bellamy declaration). Again, Bellamy cites a source and includes a hyperlink to that source in regard to physicians and medical organizations that consider "chronic-Lyme" as a valid diagnosis. (Id.).

No matter how unreasonable or offensive plaintiff believes the statements are or how much he disagrees with the statements in the Raxlen Article, the statements are nothing more than expressions of Bellamy's opinion in regard to the ongoing public discourse regarding the validity of a diagnosis of "chronic-Lyme" based upon the recitation of information and sources specifically cited in the article. See Biro, 883 F. Supp.2d at 460 ("[A] statement of opinion relating to matters of public concern which does not contain a provable false factual connotation will receive full constitutional protection. Thus an expression of pure opinion is protected however unreasonable the opinion or vituperous the expressing of it may be."). *internal citations and quotations omitted.*

Plaintiff argues that the following statements are defamatory:

> Despite the lack of evidence that "chronic Lyme" is a valid diagnosis, and
> the lack of efficacy as well as the risks of long-term antibiotic treatment,

> ILADS healthcare providers currently treat more than 100,000 patients with
> "chronic Lyme" and tick-borne diseases in the USA and around the world.
> Given media reports that patients can spend $10,000 to $35,000 for
> treatment, "Lyme literacy" translates into millions of dollars for
> practitioners.

(See pg. 6 of Ex. "C" of the Bellamy declaration). In the Raxlen Article, the paragraph above

contains a hyperlink to the International Lyme and Associated Diseases Society (hereinafter

"ILADS") website and an article dated May 18, 2016 published by Vice News regarding "chronic

Lyme" and the costs patients spent for treatment of same. (Id.).

Again, there is no mention of Dr. Cameron in the aforementioned statements. At best, the

statements pertain to the cost of services provided by a *class of physicians* that treat "chronic

Lyme", not plaintiff specifically, which is insufficient to establish that the statements are "of and

concerning" plaintiff. See Chau, 771 F.3d at 129; Small Business Bodyguard v. House of Moxie,

230 F.Supp.3d 290, 311 (S.D.N.Y. 2017) ("an impersonal reproach of an indeterminate class is

not actionable for defamation.").

The aforementioned statements in regard to the cost for treatment are also not actionable,

as they are pure opinions. Bellamy includes sources and hyperlinks to sources to support her

contention that the treatment of "chronic-Lyme" could be profitable. See Gross, 82 N.Y.2d 146.

The phrase "translates into millions of dollars" is the type of rhetorical hyperbole that would be

understood as a statement of opinion based upon the recitation of facts provided in the article.

Lastly, plaintiff alleges that the following statements in bold are defamatory:

> In any statement, it is commendable that the Board of Professional Medical
> Conduct has not let New York's unfortunate law get in the way of its
> prosecuting physicians **who take advantage of patients with a diagnosis
> of "chronic Lyme"**, no matter how they frame the specific charges. With
> two leading NY "Lyme literate" physicians now on probation **and under
> strict orders to clean up their acts**, it remains to be seen what effect this
> might have on other "Lyme literate" doctors in the state.

13

(See ¶¶ 124-125 of the Amended Complaint). These alleged defamatory statements are not actionable because they are not "of and concerning" plaintiff and/or are statements of pure opinion. The first sentence references Bellamy's opinion approving of the general steps taken by the Board in regard to violations of an *entire class of physicians* based upon the lack of the validity of a "chronic Lyme" diagnosis. Moreover, the plethora of sources cited and hyperlinked in the Raxlen Article that "chronic Lyme" is not a valid diagnosis and regarding the cost of the treatment of "chronic Lyme" recite the factual basis for Bellamy's opinion that "Lyme literate" physicians as a whole are taking advantage of patients by diagnosing them with "chronic Lyme", and treating them with long-term antibiotics. See Rubenstein, at 16-7. As such, read in context with the entire Raxlen Article, the aforementioned statements are pure opinion.

Similarly, the statement that two leading "Lyme literate" physicians were under strict orders to clean up their acts is a pure opinion. The Raxlen Article contains excerpts and summaries of the allegations and charges asserted by the Board against Dr. Raxlen, the terms of the Consent Agreement, and it included a hyperlink to the Board's website physician information page for Dr. Raxlen that contains a summary of the disposition of the charges and a copy of the Statement of Charges, the Consent Order, and the Consent Agreement. (See Ex. "C" of the Bellamy declaration). As set forth above, the Raxlen Article also included a hyperlink to the Cameron Article that details the allegations and charges asserted against Dr. Cameron, and the terms of the Consent Agreement resolving the charges asserted against him. (See Ex. "A" of the Bellamy declaration).

Specifically, the Raxlen Article lists some of activities that Dr. Raxlen agreed to perform as part of the terms of the Consent Agreement, including, but not limited to, documenting all discussions with patients about the nature and scope of Dr. Raxlen's medical evaluation and the

patient's need to pursue "conventional medical care elsewhere", documenting all histories and physical examination performed by Dr. Raxlen and his staff, referring patients to other physicians and specialists for further evaluations when necessary, and communicating to patients his specific role as a medical provider, all of which are activities Dr. Raxlen allegedly failed to do during his treatment of the patients that prompted the investigation and charges asserted by the Board of Professional Medical Conduct. (See Ex. "C" of the Bellamy declaration).

Therefore, the aforementioned information and documents recite the factual basis for Bellamy's statement that the two physicians were directed to "clean up their acts". Indeed, a fair and natural reading of the phrase "clean up their acts" in the context of the charges asserted and the terms of the Consent Agreement is that the physicians agreed to conform their activity to the standards of the Board. This is the type of rhetorical hyperbole that is typically understood as a statement of opinion. See Biro, 883 F.Supp.2d at 463.

Lastly, notwithstanding the analysis that the aforementioned statements are not actionable as they are not "of and concerning" plaintiff and were statements of opinion, the Amended Complaint fails to allege facts that the statements were made with actual malice, warranting dismissal. "Those who, by reason of the notoriety of their achievement or the vigor and success with which they seek the public's attention, are properly classified as public figures…may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." Rubenstein, at 18-9; See Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015).

Plaintiff is a public figure and as such, must demonstrate actual malice. See Rubenstein, at 19 (public figures are individuals that assumed roles of special prominence in the affairs of society, occupy positions of persuasive power and influence, and/or those that have thrust themselves to

15

the forefront of particular public controversies in order to influence the resolution of the issues involved). On the homepage of plaintiff's medical website, he is described as a "nationally recognized leader for his expertise in the diagnosis and treatment of Lyme disease and other tick-borne illnesses." (Please see **Exhibit "E"** of the Grandison declaration).

Plaintiff failed to allege facts to demonstrate actual malice in the making of the alleged defamatory statements. Plaintiff makes general and conclusory assertions that the statements were "knowingly false and made with malice". (See ¶¶ 121, 125, 126, 128 of the Amended Complaint). The Amended Complaint is devoid of any facts to demonstrate that Bellamy knew the alleged defamatory statements to be false or that the statements were made with reckless disregard for the truth. As set forth above, the statements were accompanied by a recitation of information which formed the basis of the statements.

Consequently, plaintiff's claims for defamation and the ancillary claims for a preliminary injunction and an injunction must be dismissed as a matter of law.

B.      The Inclusion of the Hyperlink to the Cameron Article Does Not Constitute an Actionable Republication

As set forth in section II(A) *supra*, the statements relied upon by plaintiff in the Amended Complaint are not actionable as defamation. The inclusion of the hyperlink to the Cameron Article, in and of itself, does not amount to a republication.

Referencing another writing that allegedly contains defamatory statements does not amount to a republication. See Goforth v. Avemco Life Ins. Co., 368 F.2d 25, 28 (4th Cir. 1966); In re Philadelphia Newspapers, LLC, 690 F.3d 161, 174-175 (3d Cir. 2012). The inclusion of a hyperlink alone "does not duplicate the content of a prior publication; rather, it identifies the location of an existing publication, though a link and reference may bring readers' attention to the

existence of an article, they do not republish the article." Mirage Entertainment, Inc. v. FEG Entretenimentos S.A., 326 F. Supp.3d 26, 39, (S.D.N.Y. 2018). *internal citations omitted.*

The sentence in which the hyperlink is contained does not constitute a republication. The sentence only provides context regarding the inclusion of the hyperlink and alerts the reader to the existence of the prior article. See In re Philadelphia, 690 F.3d at 174-75 (holding that alerting a new audience to the existence of a preexisting statement does not republish the original statement). Consequently, plaintiff's Complaint is time barred, as the inclusion of the hyperlink in the Raxlen Article does not constitute an actionable republication as a matter of law.

### Point III. Plaintiff's Complaint Must be Dismissed for Lack of Personal Jurisdiction

Notwithstanding the arguments set forth in Points I and II *supra*, New York does not have personal jurisdiction over Bellamy. On a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Adelson, 973 F.Supp.2d at 468. When the case is in the infancy stage and no discovery has been completed, the court relies upon legally sufficient allegations of jurisdiction. Id.

To exercise personal jurisdiction over a defendant, the defendant must have been properly served, personal jurisdiction must be authorized pursuant to the forum state's long-arm statute, and the exercise of personal jurisdiction must comply with constitutional due process principles. See Fischer v. Stiglitz, 2016 U.S. Dist. Lexis 74842 (S.D.N.Y.); Best Van lines, Inc. v. Walker, 490 F.3d 239, 242 (2nd Cir. 2007).

Here, jurisdiction pursuant to CPLR Sections 302(a)(2) and Section 302(a)(3) cannot serve the basis of personal jurisdiction over Bellamy, as these sections specifically exclude defamation actions. N.Y. CPLR § 302(a)(2)(3).

In a defamation case, pursuant to CPLR Section 302(a)(1), a New York court may exercise personal jurisdiction over a non-resident of New York if the defendant transacts business within the state or contracts anywhere to supply goods or services in the state. N.Y. CPLR § 302(a). New York Courts have held that "jurisdiction over a claim for defamation will lie under [Section 302(a)(1)] only if the plaintiff shows that: **(1) the defamatory utterance was purposefully directed at New York, as opposed to reaching New York fortuitously; and (2) the defendant transacted other business <u>in New York</u> that was directly connected to the claim asserted**." <u>Tannerite Sports, LLC, NBC Universal Media LLC</u>, 135 F.Supp.3d 219, 230 (S.D.N.Y. 2015). *emphasis added.*

A defendant will only be found to have transacted business if the defendant does business in New York not occasionally or causally, but with a fair measure of permanence and continuity." <u>Fischer</u>, at 9. The court must determine whether (1) the defendant transacts any business in the state and (2) whether the plaintiff's cause of action arises from the business transaction in the state. See <u>Best Van Lines</u>, 490 F.3d at 246. "Courts look to the totality of the defendant's activities within the forum to determine whether a defendant has transacted business in such a way that it constitutes purposeful activity...." <u>Id</u>. *citing* <u>Sterling National Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors</u>, 510 F.2d 870, 873 (2d Cir. 1975). "The crucial question is whether the defendant has purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws such that the defendant should reasonably anticipate being haled into court there." <u>Id</u>. at 242. *internal citations and quotations omitted.*

"New York courts construe transacts any business within the state more narrowly in defamation cases than they do in the context of other sorts of litigation...In defamation cases, by

contrast, the single act of uttering a defamation, no matter how loudly, is not a transaction of business that may provide the foundation for personal jurisdiction." Best Van Lines, 490 F.3d at 248. *internal quotations omitted*. Posting on a website that can be accessed by New York citizens does not establish that a defendant transacted business in New York. See Tannerite Sports, 135 F.Supp.3d at 231.

Plaintiff alleges in the Amended Complaint that Bellamy resides in Florida, is an attorney licensed to practice law in Florida, and that she has a principal place of business in Florida. (See ¶ 7 of Dkt. No. 73). Plaintiff alleges that Bellamy "transacted and transacts business in New York *through the internet*", and that New York has jurisdiction over Bellamy because the alleged defamatory statements were purposefully directed at plaintiff, a resident of New York. (Id.). Plaintiff further alleges that New York has jurisdiction because the subject website is allegedly an "interactive website". (Id. at ¶¶ 49-52).

Although there may be some statements in the Cameron Article that pertain to Dr. Cameron (which cannot form the basis of plaintiff's defamation claim as it is time barred), and notwithstanding the aforementioned analysis that the statements in the Raxlen Article are not "of and concerning" plaintiff and are not defamatory, the statements were not purposefully directed at New York, as opposed to anyone throughout the world. See Best Vans Lines, 490 F.3d at 253. Even if the statements were purposefully directed at New York, plaintiff failed to allege any facts that Bellamy transacted other business in connection with the alleged defamatory statements in New York. See Tannerite Sports, 135 F.Supp.3d at 230.

Indeed, Bellamy did not transact business in New York in relation to the creation of the subject articles. The research for the subject articles was performed in Florida. (See the Bellamy declaration). The fact that the documents pertaining to the charges asserted against Dr. Cameron

19

were issued by a New York agency, made available by that agency on the internet, and accessed by Bellamy in Florida does not constitute a "contact" or transacting business as plaintiff alleges. Lastly, the articles were drafted and posted on the subject website in Florida. (Id.).

New York courts have only found personal jurisdiction over an out-of-state defendant as a result of alleged defamatory statements made outside of New York that targeted a New York resident where the "conduct" included something more than the alleged defamatory statements alone, which are not present in the instant matter. See Best Van Lines, 490 F.3d at 249; Sovik v. Healing Networking, 244 A.D.2d 985, 665 N.Y.S.2d 997 (4th Dept. 1997) (personal jurisdiction was found over an out-of-state defendant that drafted the alleged defamatory letter in New York and either distributed or authorized the distribution of the alleged defamatory letter in New York); Legros v. Irving, 38 A.D.2d 53, 327 N.Y.S.2d 371 (1st Dept. 1971) (the court held that all of the actions pertaining to the publication of a book that contained alleged defamatory statements occurred in New York, including research for the book, negotiations for a contract with a publisher in New York, and the book was printed in New York).

The Amended Complaint alleges that all of Bellamy's alleged actions took place in Florida. Bellamy was never in New York, and she performed research for, drafted, and published the alleged defamatory articles in Florida. As such, this Court does not have personal jurisdiction over Bellamy for the alleged defamatory statements. See Streslin v. Barrett, 36 A.D.2d 923, 320 N.Y.S.2d 885 (1st Dept. 1971) (holding that New York did not have personal jurisdiction over the defendant, who allegedly made defamatory statements about the plaintiff who resided in New York, on a television broadcast that was recorded in California and subsequently distributed in New York); Yanni v. Variety, Inc., 48 A.D.2d 803, 369 N.Y.S.2d 448 (1st Dept. 1975) (holding that New York did not have personal jurisdiction over the defendant, who allegedly made

20

defamatory statements about the plaintiff who resided in New York in a newspaper published and distributed primarily in California).

Contrary to plaintiff's assertion, the allegations that the subject website allows individuals to post comments and that the subject website solicits donations is insufficient to establish that New York has jurisdiction over Bellamy. See Best Van Lines, 490 F.3d at 254 (holding that even if a website's acceptance of donations was enough to consider it as "transacting any business" in New York, the plaintiff's defamation claim did not arise from the website's acceptance of donations for purposes of jurisdiction pursuant to CPLR Section 302(a)(1)). There is no "articulable nexus, or a substantial relationship" between the alleged donations and an individual's ability to post comments on the subject website and the alleged defamatory statements. Id.

Moreover, based upon the foregoing, this Court also does not have jurisdiction over Bellamy pursuant to CPLR Section 301. N.Y. CPLR § 301; Fischer at 9 *citing* Landoil Res. Corp. v. Alexander & Alexander Servs., Inc. 77 N.Y.2d 28, 563 N.Y.S.2d 739 (1990) ("jurisdiction will only be found when a defendant does business in New York not occasionally or causally, but with a fair measure of permanence and continuity."); Rosado v. Bondi, U.S. Dist. Lexis 178586 (S.D.N.Y. 2017). Hence, the Complaint must be dismissed for lack of personal jurisdiction.

**Point IV.        The Complaint Must be Dismissed Pursuant to Florida's anti-SLAPP Law**

The Cameron and Raxlen Articles are protected from a defamation claim pursuant to Florida's anti-SLAPP statute. Fla. Stat. § 768.295. Pursuant to Florida's anti-SLAPP statute, a person shall not engage in meritless strategic lawsuits against public participation that infringe upon an individual's right to exercise constitutional rights of free speech in connection with public issues. Id. The statute defines "free speech in connection with public issues", as any issue under

21

consideration or review by a governmental entity or is made in connection with, amongst other things, a book, news report, or other similar work. Id.

Indeed, the subject articles pertain to public issues, as they discuss public health, medical conditions, and the treatment of same on a national scale, as well as disciplinary actions taken by a governmental agency. Therefore, Florida's anti-SLAPP law is applicable and Bellamy is entitled to an award of attorneys' fees and costs.

**Point V.          The Complaint Must be Dismissed Pursuant to Section 74 of the New York Civil Rights Law**

Section 74 of the New York Civil Rights Law states that a civil action cannot be maintained against anyone for the publication of a fair and true report of any judicial proceeding. N.Y. Civ. Rights Law § 74. To be considered fair and accurate, it is sufficient that the substance of the article be substantially accurate, and a fair and accurate report is protected by an absolute privilege and cannot be defeated by an allegation of malice or bad faith. See Fuji Photo Film U.S.A., Inc., v. McNulty, 669 F.Supp.2d 405, 411 (S.D.N.Y. 2009).

Although the claims based upon the Cameron Article are barred by the statute of limitations, and the Raxlen Article is not an actionable republication and does not contain defamatory statements regarding Dr. Cameron, the articles are reports of official Board proceedings. See Easton v Public Citizens, Inc., U.S. Dist. Lexis 18690 (S.D.N.Y 1991) (courts have broadly construed the meaning of an official proceeding for purposes of Section 74 of the New York Civil Rights Law). Despite what can, at best, be described as containing rhetorical hyperbole, as set forth above, the Raxlen Article is substantially accurate, as it contains accurate excerpts of the charges of professional misconduct against Dr. Raxlen. Therefore, the Amended Complaint must be dismissed as a matter of law.

22

## CONCLUSION

It is clear that plaintiff's defamation claims based upon the Cameron Article are barred by New York's statute of limitations. As a matter of law, the Raxlen Article does not constitute an actionable republication and it does not contain independent defamatory statements regarding plaintiff. Therefore, the Amended Complaint must be dismissed.

In addition, this Court lacks personal jurisdiction over Bellamy for the alleged defamatory statements contained within the Cameron and Raxlen Articles that were authored and published in Florida. Additionally, the Complaint must be dismissed pursuant to Florida's anti-SLAPP law, and the statements are privileged as a fair report pursuant to New York law.

Dated: New York, New York
March 11, 2019

Respectfully submitted,

By: _____
Sasha R. Grandison (SG1023)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
*Attorneys for Jann Bellamy i/s/h/a Jann Bellamy M.D.*
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000
File: 17163.00004
Sasha.Grandison@wilsonelser.com

23

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY,** that on March _12_ , 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and accurate copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

By: _____

Sasha R. Grandison (SG1023)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
*Attorneys for Jann Bellamy i/s/h/a Jann Bellamy M.D.*
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000
File: 17163.00004
Sasha.Grandison@wilsonelser.com

24