UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

DANIEL CAMERON, M.D.,                    :       Case No:  7:18-cv-10395 (VB)
                                         :
            Plaintiff,                   :       **MEMORANDUM IN SUPPORT OF**
                                         :       **SPECIAL MOTION TO DISMISS**
      v.                                 :       **AMENDED COMPLAINT AND**
                                         :       **MOTION TO DISMISS AMENDED**
JANN BELLAMY; DAVID H. GORSKI,           :       **COMPLAINT PURSUANT TO FED. R.**
M.D.; STEVEN NOVELLA, M.D.;              :       **CIV. P. 12(B)(2) AND (6)**
KIMBALL C. ATWOOD, IV, M.D.;             :
HARRIET HALL, M.D.; and MARK             :
CRISLIP, M.D.,                           :
                                         :
            Defendants.                  :

----------------------------------------------------x

## MEMORANDUM IN SUPPORT OF MOTION TO DIMISS

        Dr. Cameron amended, but his amendment fails to the fact that his claims are time-barred.  It also fails to cure the fatal defects that the statements were based on a fair report of disciplinary action, against an editor immune under Section 230 of the Communications Decency Act.  As Dr. Novella is a Connecticut citizen and resident, the amended complaint is subject to the Connecticut anti-SLAPP law.[1]

        Dismissal is especially appropriate when there are censorious claims based on speech regarding health care. *See Spelson v. CBS, Inc*., 581 F. Supp. 1195 (N.D. Ill. 1984) ("There may be no more serious or critical issue extant today than the health of human beings. Given the frailty of human existence, any controversy on the subject must be afforded wide open discussion and criticism so that individuals may make well educated health care choices").  All claims should be dismissed pursuant to the Connecticut anti-SLAPP law and under Fed. R. Civ. P. 12(b)(2) and (6).

---

[1] Dr. Cameron has claimed that Florida law *may* apply.  If so, then the Florida anti-SLAPP law should apply.

1    **1.0    FACTUAL BACKGROUND**

2    On June 22, 2017, Jann Bellamy published an article about the discipline imposed on

3    Plaintiff on the *Science Based Medicine* blog.   Amd. Compl. at ¶ 61 & Ex. A ("Cameron

4    Article") (Dkt. No. 73). "Dr. Cameron's practice consists primarily of patients seeking treatment

5    for Lyme disease." *Cameron v. Zucker*, No. 17-cv-3420 (JGK), 2017 U.S. Dist. LEXIS 87229 at

6    *22 (S.D.N.Y. June 6, 2017).  "The diagnosis of 'chronic Lyme disease' is controversial among

7    medical specialists." *Konspore v. Friends of Animals, Inc.*, 2010 U.S. Dist. LEXIS 77705, at *1

8    n.1 (D. Conn. Aug. 2, 2010) citing Feder, et al., *A Critical Appraisal of "Chronic Lyme*

9    *Disease",* 357 NEW ENG. J. MED. 1422, 1422 (2007) (Dkt. 50-1).[2]

10   The Cameron Article discussed a June 15, 2017 Consent Order with the N.Y. Board for

11   Professional Medical Conduct, BPMC No. 17-169.  *See* Amd. Compl. at ¶ 63; a copy appears at

12   Dkt. No. 50-2.[3]   It entered one week after Cameron failed to enjoin the proceedings.   *See*

13   *Zucker, supra*; *see also Matter of Cameron v. Shah*, 140 A.D.3d 439, 31 N.Y.S.3d 867 (App.

14   Div. 2016) (denying Article 78 petition) *leave to appeal denied* 28 N.Y. 3d 914 (2017).

15   **1.1    Jann Bellamy Reports**

16   Jann Bellamy is a "Contributor" to Science-Based Medicine and Dr. Steven Novella is

17   the Executive Editor.[4]  *See* Amd. Compl. at ¶¶ 7 & 9.

18   Plaintiff alleges that Novella "posted, contributed substantive content…and caused to be

19   posted or conspired with the other named defendants to post" the allegedly defamatory

20   statements in the articles.  *Id.* at ¶ 9.  There are no specific allegations as to actual content

21

22   [2] The Court may take judicial notice of peer-reviewed scientific publications.  *See Browning-Ferris Indus. of S. Jersey, Inc. v. Muszynski*, 899 F.2d 151, 161 (2d Cir. 1990).

23   [3] In considering a motion to dismiss under Rule 12(b)(6), the court matters of which judicial notice may be taken
24   pursuant to Fed. R. Civ. P. 10(c). *See Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) citing *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Among the items subject to judicial notice are decisions of an administrative agency. *See id.* at 276.

25   [4] Although it does not appear in the version of the Cameron Article at Dkt. No. 1-1, the Court, per Rule 10(c), may
26   consider the original, online version where the hover-over menu, based on the same underlying HTML code, identifying the Contributors and Editors.  Ms. Bellamy is a contributor only, not an editor.

27

28

written by him.  *Contrast id.* at ¶ 158 (generic allegation of authorship).  However, the only person identified as the "author" is Bellamy.  *Id.* at ¶ 7.

Bellamy identifies Dr. Cameron as a "'Lyme literate' guru" who was given an agreed 3-year probation due to professional misconduct charges based on his stipulation of inability to defend against at least one charge.  Cameron Article at 4.[5]  She quotes Dr. Cameron's claim that he is a "recognized leader" for "expertise in the diagnose and treatment of Lyme disease," but opining it is a self-serving designation, since his recognition is among those who treat so-called "chronic Lyme" with long-term antibiotics, not among competent infectious disease specialists. *Id.* at 5.

Next, Bellamy discusses the International Lyme and Associated Diseases Society, of which Dr. Cameron is past-president.  *Id.* at 6.  She discusses his efforts to protect these practitioners from investigation based on the "recommendation or provision of a treatment modality to a particular patient by such licensee that is not universally accepted by the medical profession, including but not limited to, varying modalities used in the treatment of Lyme disease and other tick-borne diseases."  N.Y. Pub. Health Law § 230 (9-b); *see also* Cameron Article at 6, linking to http://danielcameronmd.com/cameron-legislative-affairs/ .

The article discusses Cameron's disciplinary history.  *See* Cameron Article at 8-13.  It notes that the charges were based on expert review and were "uncontested."  *Id.* at 8.  The article does not discuss the proceedings in general, instead discussing the Consent Order and

---

[5] Bellamy's reporting was factually supported.  As part of the Consent Order, Dr. Cameron "assert[ed] that [he] cannot successfully defend against at least one of the acts of misconduct alleged" in the Statement of Charges incorporated into the Consent Agreement.  Dkt. 50-2. at 3.  As this Court summarized:

> [T]he Statement of Charges accuses Dr. Cameron of deviating from minimally accepted standards of care that apply to all doctors and that apply regardless of whether the patient at issue is being treated for Lyme disease in accordance with ILADS guidelines or not.

*Cameron v. Zucker,* No. 17-cv-3420 (JGK), 2017 U.S. Dist. LEXIS 87229, at *19 (S.D.N.Y. June 6, 2017).  Cameron previously conceded "that the ILADS guidelines do not allow or advise the conduct alleged in the Statement of Charges." *Id.* at * 20.  The sanctions, including obtaining informed consent, exceeded those for mere record-keeping violations; they were necessarily for his indefensible negligence and/or incompetence. Dkt. No. 50-2 at 4-6.

1   Consent Agreement, devoid of any contest of the underlying allegations, except that it would

2   not constitute an admission *if* the Board did not adopt it.  *See* Dkt. No. 50-2 at 10.  The Consent

3   Order itself makes no mention of his prior answer (Dkt. No. 73-4) denying the allegations.

4           Bellamy then delved into the discipline, including the need for a "practice monitor,"

5   ensure informed consent, maintain insurance, obtain medical records, and refer patients out, as

6   well as take continuing medical education (CME) courses.  *Id.* at 11-13.  She notes the risks of

7   the discipline in not going far enough to restrict Dr. Cameron's unscientific treatments.  *See id.*

8   at 12.  She concludes with a murky outlook on the future: whether the discipline of Dr.

9   Cameron will rein in practitioners or whether they will be emboldened by favorable pending

10  legislation.[11]  *See id.* at 13.

11          On November 9, 2017, Attorney Bellamy wrote an article discussing the three-year

12  probation imposed on Dr. Bernard Raxlen, BPMC No. 17-303.  *See* Dkt. No. 73-2 ("Raxlen

13  Article") at 4.  Like Dr. Cameron, Dr. Raxlen treats "chronic Lyme."  *See id.* at 4.

14          Dr. Cameron asserts that the Raxlen Article constitutes a re-posting of the Cameron

15  Article.  Amd. Compl. at ¶ 115-116.  Specifically, the Raxlen Article mentions:

16          [Raxlen] becomes the second "Lyme literate" VIP disciplined by NY medical
            authorities this year.  Based on similar charges of professional misconduct, David
17          Cameron, MD, was also put on probation with numerous practice restrictions in
            June.
18

19  Raxlen Article at 4.  At Dr. Cameron's name is a hyperlink to the Cameron Article.  *See id.*  The

20  Raxlen Article states that "Lyme literate" physicians "fabricated" the "Chronic Lyme"

21  diagnoses, noting it was called a "prototypical fake diagnosis, and discusses the fees that

22  healthcare providers charge "[d]espite the lack of evidence that 'chronic Lyme' is a valid

23  diagnosis[.]"  Amd. Compl. at 121, 124(1st), & 125(1st).[14]  The article also refers to the Board

24
    ─────────────────────
25  [11] a) Tick borne illness treatment and education act of 2017, NY A.B. 114 (2017); b) Tick borne illness treatment
    and education act of 2017, NY S.B. 4713 (2017); c) NY S.B. 670 (2017); d) NY A.B. 4863 (2017); e) NY S.B.
    2168 (2017); and f) NY A.B. 6927 (2017).
26  [14] There are two sets of paragraph 124 & 125.

27
28

prosecuting physicians "who take advantage of patients with a diagnosis of 'chronic Lyme'",

ordering them "to clean up their acts."  Id. at 124(2nd) & 125(2nd).

## 2.0    Legal Standard

### 2.1    Anti-SLAPP Standard

Conn. Gen. Stat. § 52-196a ("Connecticut anti-SLAPP statute") protects Connecticut

citizens' right to free speech.   Under it, "[i]n any civil action in which a party files a complaint,

… against an opposing party that is based on the opposing party's exercise of its right of free

speech … under the Constitution of the United States or the Constitution of the state in

connection with a matter of public concern, such opposing party may file a special motion to

dismiss the complaint…."  Conn. Gen. Stat. § 52-196a(b).  The applicable standard is:

> The court shall grant a special motion to dismiss if the moving party makes an
> initial showing, by a preponderance of the evidence, that the opposing party's
> complaint … is based on the moving party's exercise of its right of free
> speech … under the Constitution of the United States or the Constitution of the
> state in connection with a matter of public concern, unless the party that brought
> the complaint … sets forth with particularity the circumstances giving rise to the
> complaint … and demonstrates to the court that there is probable cause,
> considering all valid defenses, that the party will prevail on the merits of the
> complaint ….

Conn. Gen. Stat. § 52-196a(e)(3). The Complaint is based on the exercise of free speech in

connection with a matter of public concern and Plaintiff lacks probable cause of prevailing.

Alternately, the matter should be dismissed under the Florida anti-SLAPP law, Fla. Stat.

§ 768.295.   That statute prohibits a lawsuit (a) that is "without merit," and (b) because the

defendant "has exercised the constitutional right of free speech in connection with a public

issue," which the statute defines as any written or oral statement "made in or in connection with

a . . . news report, or other similar work." *Boling v. WFTV, LLC*, 2018 Fla. Cir. LEXIS 1860

(Fla. 9th Jud. Cir. Feb. 28, 2018), slip op. at 3, quoting Fla. Stat. §§ 768.295(2)(a), (3).  This

lawsuit arises out of such rights and, the lawsuit is without merit.  Under either, an award of

attorneys' fees and costs are mandatory. *Boling, supra,* citing Fla. Stat. § 768.295(4).

1

2

### 2.2     Application of Anti-SLAPP in Federal Court

Most state anti-SLAPP statutes are substantive and, thus, applicable *See, e.g.*, *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999) (California statute); *Henry v. Lake Charles Am. Press LLC*, 566 F.3d 164, 168-169 (5th Cir. 2009) (Louisiana statute); *Godin v. Schencks*, 629 F.3d 79, 86-87 (1st Cir. 2010) (Maine statute).  The Second Circuit agrees.  *See Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (Nevada statute); *Liberty Synergistics Inc. v. Microflo Ltd*., 718 F.3d 138 (2d Cir. 2013) (California statute).   The substantive rights to immunity from suit and fee-shifting will apply, whereas procedural aspects such as filing deadlines and discovery stays do not. *See, e.g., Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016).

The substantive rights in the Connecticut statute are identical to those in the Nevada and California statutes previously permitted in Federal court. The same holds true for the Florida analog.[16]  The operative provisions focus on the substantive right to immunity from a lawsuit arising from free speech on a matter of public concern.  *See* Conn. Gen. Stat. § 52196a(b); Fla. Stat. §§ 768.295 (3), (4). The laws address the substantive burden. *See* Conn. Gen. Stat. § 52196a(e)(3); Fla. Stat. § 768.295(3).  And, the laws provide a substantive right to attorneys' fees.  *See* Conn. Gen. Stat. § 52196a(f); Fla. Stat. § 768.295(4). Thus, they are applicable here.

### 2.3     Connecticut's anti-SLAPP Statute Should be Applied

The Court should apply Connecticut's anti-SLAPP law. "Ordinarily, in a diversity case, the Court must apply the choice of law rules of the forum state to determine which state's

---

[16] Recently, the Eleventh Circuit found that Georgia's statute could not apply under the *Erie* doctrine.  *See Carbone v. CNN, Inc*., No. 17-10812, 2018 U.S. App. LEXIS 35095 (11th Cir. Dec. 13, 2018).  However, it is unlikely the Eleventh Circuit would find Florida's statute inapplicable.  In *Carbone,* the Court focused on the procedural requirements of the Georgia law; Florida's contains none of those.  Instead, the Florida statute provides only that it may be invoked as a substantive fee shifting right as part of an ordinary motion to dismiss or motion for summary judgment.  Fla. Stat. § 768.295(4).  Although the Connecticut statute is more similar to Georgia's, they are both similar to Nevada's, permitted in *Adelson*, and the Second Circuit would likely follow its own precedent.

substantive law should be applied." *Neal v. Asta Funding, Inc.*, No. 13 CV 2176 (VB), 2014 U.S. Dist. LEXIS 113142, at *4 (S.D.N.Y. June 17, 2014)(Briccetti, J.).  In tort actions,[17] New York applies the substantive law of the jurisdiction with the most significant interest in the "specific issue raised in the litigation." *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 196, 480 N.E.2d 679, 491 N.Y.S.2d 90 (1985). Where alleged defamation is published nationally, the "presumptive" rule that the law of plaintiff's domicile applies "does not hold true . . . if 'with respect to the particular issue, some other state has a more significant relationship to the issue or the parties.'" *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1091 (S.D.N.Y. 1984) (quoting Restatement (Second) of Conflict of Laws § 150 cmt. (e) (1977)).  "Justice in conflicts rules, as in jurisdiction, requires minimal contacts with another forum before subjecting the nondomiciliary to its laws.  There is a serious question of deprivation of the defendant's due process rights [in] casting him in liability under the law of a state with which he [has] in no way voluntarily associated himself." *Id.* at 1093 (internal citation and quotation marks omitted).

There are no allegations of Dr. Novella's contacts with New York;[18] he is an editor of a website where the articles were published.  He did not submit himself to New York law and

---

[17] Anti-SLAPP laws are not limited to tort claims.  They are substantive immunities governed under the choice of law principles set forth in *Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972).  *See Barkanic v. Gen. Admin. of Civil Aviation of People's Republic of China*, 923 F.2d 957, 963 (2d Cir. 1991).  Under *Neumeier*, the law where the wrong occurred controls unless the parties are domiciliaries of the same state.  *See id.* at 962. Here, Dr. Novella's wrong could only have occurred in Connecticut.  Alternately, since the publication was made in Florida, its law would apply.  New York's would not.

[18] The Court may also dismiss the matter for lack of personal jurisdiction over Dr. Novella under Fed. R. Civ. P. 12(b)(2).  *See Fischer v. Stiglitz*, 2016 U.S. Dist. LEXIS 74842, at *14-16 (S.D.N.Y. June 8, 2016) (observing that CPLR § 302(a)(1) required New York contacts that were "something more" than the mere publication of an article on the internet.)  There are no allegations of sufficient contacts and mere foreseeability of injury in New York is insufficient.  *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018).  That the website has a comments section and permits donations does not mean Dr. Novella transacted business in New York. Compare Amd. Compl. at 49 & 50.  "Researching" New York documents is not a transaction, neither is it alleged Dr. Novella himself did so. *Id.* at 35.  Dr. Novella's lack of contacts with New York generally and in connection with the articles is more fully set forth in his accompanying affidavit.  See Exhibit 1, Declaration of Steven Novella, M.D.; see also Dkt. No. 83, Declaration of Jann Bellamy.  However, Dr. Novella would prefer the Court adjudicate the matter on the merits, especially as to the anti-SLAPP aspect, to avoid a yet another round of litigation.

there are no allegations that he had any identifiable role in the publication.[19] Instead, the only specific allegation as to Dr. Novella is to his status as Executive Editor in Connecticut. Connecticut, therefore, has the most significant interest in protecting its citizen. *See, e.g., Doctor's Data, Inc. v. Barrett*, No. 10 C 03795, 2011 U.S. Dist. LEXIS 134921, at *8 (N.D. Ill. Nov. 22, 2011) (anti-SLAPP law of state of defamation defendant has most significant interest). Alternately, as Plaintiff alleges authoring and publishing occurred in Florida, invoking its statute of limitations, Florida's anti-SLAPP law should apply.  *See* Amd. Compl. at 137-138. Under either, the case should be dismissed and the fee-shifting provisions should apply.

### 2.4    Dismissal Under Rule 12(b)(6)

An action may be dismissed under both state anti-SLAPP law and Fed. R. Civ. P. 12(b)(6).  *See Adelson*, 774 F.3d at 805.  In fact, if the Amended Complaint is dismissed, it should be dismissed under the Rule 12(b)(6) standard, but fees should be awarded due to the applicability of the Anti-SLAPP statutes' substantive provisions (fee shifting and immunity from suit).

A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A claim is plausible "when the plaintiff pleads

---

[19] The speculative and collective identification of the defendants fails to adequately identify which defendant caused Plaintiff's alleged injury.  It fails to set forth with particularity what Dr. Novella did to give rise to alleged liability, rather than any other person affiliated with *Science-Based Medicine*.  The Amended Complaint is insufficient and speculative under *Twombly* and *Iqbal*. *See Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-00523, 2010 U.S. Dist. LEXIS 59869, at *17 (W.D. Pa. June 16, 2010).  A plaintiff's generic averments and formulaic recitations that do not disambiguate defendants fail under the federal pleading standard. *See Sherman v. Stryker Corp.*, No SAVC 09-224 JVS (ANx), 2009 U.S. Dist. LEXIS 34105 (C.D. Cal. March 30, 2009).

Courts dismiss actions where the complaints lump defendants together. *See Haskins v. Zimmer Holdings, Inc.*, 2010 U.S. Dist. LEXIS 7690, (D. Vt. Jan. 29, 2010); *Hendrikx v. State*, 2013 U.S. Dist. LEXIS 155217, at *6 (D. Utah Oct. 29, 2013) (Rule 8(a) not met where "[t]he Complaint wholly fails to give the Defendants adequate notice of the misconduct each is alleged to have committed."); *Combs v. Stryker Corp.*, 2009 U.S. Dist. LEXIS 115920, 2009 WL 4929110 (E.D. Cal. Dec. 14, 2009); *Timmons v. Linvatec Corp.*, 263 F.R.D. 582, 2010 U.S. Dist. LEXIS 14057 (C.D. Cal. 2010); *Adams v. I-Flow Corp.*, 2010 U.S. Dist. LEXIS 33066 (CD. Cal. Mar. 30, 2010)*; Peterson v. Breg, Inc.*, 2010 U.S. Dist. LEXIS 48985 (D. Ariz. April 28, 2010).  As the Amended Complaint should be dismissed on this basis, it is also insufficient for choice of law purposes.

1  factual content that allows the court to draw the reasonable inference that the defendant is liable

2  for the misconduct alleged." *Iqbal*, 556 U.S. 662, 678 (2009).  "[N]aked assertions" or

3  "conclusory statements" fail. *Id*. (quotation omitted).

4      Dr. Cameron says he is a "nationally recognized leader for his expertise in the diagnosis

5  and treatment of Lyme disease and other tick-borne illnesses."  *See* Cameron Article quoting

6  http://danielcameronmd.com/dr-daniel-cameron-lyme-expert/.   He now denies it.   But, his

7  belated denial does not erase this claim.   Amd. Compl. at ¶ 141.  "[I]t is no answer to the

8  assertion that one is a public figure to say, truthfully, that one doesn't choose to be. It is

9  sufficient, . . . that '[the plaintiff] voluntarily engaged in a course that was bound to invite

10 attention and comment.'"  *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1496 (11th Cir. 1988),

11 quoting *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 861 (5th Cir. 1978).   Public

12 figures must "show that the statements were made with 'actual malice'—that is, with

13 knowledge that the statements were false or with reckless disregard as to their falsity."  *Curtis

14 Publ'g Co. v. Butts*, 388 U.S. 130, 154-55 (1967); *Lerman v. Flynt Distrib. Co*., 745 F.2d 123,

15 137, 139 (2d Cir. 1984) (limited-purpose figures).  "[Actual] malice must be alleged plausibly

16 in accordance with Rule 8."  *Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015).[20]

17     Failure to plausibly plead facts satisfying the actual malice standard warrants

18 dismissal.[21] *See, e.g., Biro*, 807 F.3d at 546; *Haywood v. St. Michael's College*, 536

19 F. App'x 123, 124 (2d Cir. 2013) ("the complaint simply does not plausibly allege that

20 [defendants] acted with actual malice"); *Sentementes v. General Elec. Co.*, 2014 WL 2881441,

21 *11 (D. Conn. June 25, 2014) (dismissing claim for failure to allege facts tending to show

22 knowledge of falsity or reckless disregard for the truth, "despite using the word 'maliciously' in

23 their pleadings").  Though Dr. Cameron makes a formal recitation that the statements were

[20] Under the New York anti-SLAPP law, Dr. Cameron must otherwise meet this burden. *See* NY CVR § 76-A(2).
[21] Even if it is determined that Dr. Cameron is not a public figure, it must still demonstrate that the statements were negligently made, which as discussed in greater detail below, they were not.

1   made with actual malice (Amd. Compl. at ¶ 144), he fails to allege how they were knowingly

2   false or made with reckless disregard.  This Court emphasizes the special role the courts must

3   play at the pleading stage when First Amendment freedoms are at stake: "[I]n defamation cases,

4   Rule 12(b)(6) not only protects against the costs of meritless litigation but provides assurance to

5   those exercising their First Amendment rights that doing so will not needlessly become

6   prohibitively expensive." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013) *aff'd*

7   807 F.3d 541.  The case should be dismissed.

8   **3.0     ANALYSIS**

9        **3.1     The Articles Are Protected Under the Anti-SLAPP Law**

10           No matter which state's anti-SLAPP law governs, Dr. Novella is protected.  The articles

11   are speech on a public concern in connection with public issues.  The "right of free speech"

12   under the Connecticut statute "means communicating, or conduct furthering communication, in

13   a public forum on a matter of public concern." *See* Conn. Gen. Stat. § 52-196a(a)(2).   Under

14   Florida law, "the right[] of free speech in connection with public issues" includes written

15   statements "made in or in connection with a…news report, or other similar work."  Fla. Stat. §

16   768.295 (1), (2)(a).  The statements were made on a public forum, a public website.

17           The speech is on a matter of public concern.  The Connecticut anti-SLAPP statute

18   defines "matter of public concern" as "an issue related to (A) health or

19   safety, (B) environmental, economic or community well-being, … [or] (D) a public official or

20   public figure …."  Conn. Gen. Stat. § 52-196a(1).   The articles address disciplinary actions

21   taken by a governmental agency, public health, and proposed legislation.

22           The third element, lack of probable cause of prevailing, is discussed below.  Connecticut

23   defines probable cause as "a *bona fide* belief in the existence of the facts essential under the

24   law . . . such as would warrant a [person] of ordinary caution, prudence and judgment, under

25   the circumstances, in entertaining it." *J.K. Scanlan Co. v. Constr. Grp., Inc*., 80 Conn. App.

26   345, 350 (2003) (quotations omitted).  There is no probable cause to support Plaintiff's claims.

27

28

### 3.2     Dr. Novella is Immune under CDA Section 230

Plaintiff asserts two claims in his Complaint: libel *per se* and injunctive relief.[22]  Both seek to hold Dr. Novella liable for statements that were not authored by him, but were published on a website where he holds the title "Executive Editor." This is the scenario contemplated by the Communications Decency Act, 47 U.S.C. § 230 (the "CDA" or "Section 230"). The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  The effect of the statute is to bar "'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content.'" *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450 (E.D.N.Y. 2011) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997)).  "Courts across the country have repeatedly held that the CDA's grant of immunity should be construed broadly." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 700-701 (S.D.N.Y. 2009) (collecting cases).

"Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009).  Thus, dismissal of a complaint on Section 230 grounds "is appropriate unless the complaint pleads non-conclusory facts that plausibly indicate that 'any alleged drafting or revision by [the defendant] was something more than a website operator performs as part of its traditional editorial function,' thereby rendering it an information content provider." *Westlake Legal Group v. Yelp, Inc.*, 599 F. App'x 481, 485 (4th Cir. 2015).  Section 230 only fails to apply where an information service provider acts as an "information content provider" with respect to the statements in question, such that it is "'responsible, in whole or in part, for the creation or development of [the]

---

[22] The second claim "is subject to dismissal on the ground that an injunction is a remedy, not a separate cause of action."  *Catalano v. BMW of N. Am., Ltd. Liab. Co.*, 167 F. Supp. 3d 540, 563 (S.D.N.Y. 2016).

1  information."' *Ascentive*, *supra* at 474. "Asserting or implying the mere possibility" that a

2  defendant played a more involved role in the creation of statements beyond that of a publisher is

3  insufficient to defeat Section 230 immunity. *Id*. at 474-75.

4       A provider of an interactive computer service for purposes of the statute is one who

5  operates "'any information service, system, or access software provider that provides or enables

6  computer access by multiple users to a computer service.'" *Gucci Am., Inc. v. Hall & Assocs.*,

7  135 F. Supp. 2d 409, 412 (S.D.N.Y. 2001). A website falls within this definition. *Ascentive*,

8  *supra* at 473 (collecting cases). Plaintiff pleads no plausible allegations that Dr. Novella acted

9  in any capacity other than as the provider of an interactive computer service.

10       Plaintiff claims Dr. Novella "conspired with the other named defendants" and that he

11  "contributed substantive content" without any specific factual allegations.[23]  Amd. Compl. at ¶

12  9. His attempt to plead around Section 230 provide no details as to any substance or content

13  contributed by anyone other than Bellamy. *Id*. at ¶¶ 158-160. Claims premised on "information

14  and belief" allegations can survive a motion to dismiss only "where the facts are peculiarly

15  within the possession and control of the defendant," or "where the belief is based on factual

16  information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*,

17  604 F.3d 110, 120 (2d Cir. 2010). Here, there are no facts peculiarly within Defendants'

18  possession—Bellamy's name as sole author of the articles is patent in the bylines.

19       Bellamy's status as a "Contributor" is not legally relevant. Section 230 immunizes

20  operators of a website from claims based on statements of other titled persons. *See Best

21  Western Int'l, Inc. v. Furber*, 2008 U.S. Dist. LEXIS 70552 (D. Ariz. Sept. 5, 2008) (finding

22  that co-operators of web site were immune under Section 230 as to statements authored by other

23  co-operator); *see also Higher Balance, LLC v. Quantum Future Group, Inc.*, 2008 U.S. Dist.

24  LEXIS 102611, *20 (D. Ore. Dec. 18, 2008); *Stevo Design, Inc. v. SBR Mktg.*, 919 F. Supp. 2d

---

[23] New York does not have a tort of conspiracy. Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006).

1112 (D. Nev. 2013); *Shamili v. Real Estate Group of N.Y., Inc.*, 17 N.Y.3d 281, 292-93 (2011); *Internet Brands, Inc. v. Jape*, 760 S.E.2d 1, 4 (Ga. App. 2014) ; *Derek W. Cornelius & Si03, Inc. v. Bodybuilding.com, LLC*, 2011 U.S. Dist. LEXIS 59005, *17 (D. Idaho, June 1, 2011).  Neither is there any factual information to make an inference that Dr. Novella is culpable as a substantive contributor—no facts were pleaded as to his role regarding the articles other than his mere status as an editor of the blog in general.

Neither is Dr. Novella liable as part of a conspiracy.  "[A]lthough tort liability may be imposed based on allegations of conspiracy which connect nonactors, who might otherwise escape liability, with the tortious acts of their coconspirators, more than a conclusory allegation of conspiracy or common purpose is required to state a cause of action against such nonactor." *Treppel v. Biovail Corp.*, 2005 U.S. Dist. LEXIS 18511, at *18 (S.D.N.Y. Aug. 30, 2005) quoting *Schwartz v. Soc'y of the New York Hosp.*, 199 A.D.2d 129, 129-30, 605 N.Y.S.2d 72 (App. Div. 1993) (citations omitted) (dismissing conspiracy to defame claims because of a lack of "independent culpable behavior" on the alleged conspirators' part to link them to the allegedly defamatory statements).  These are merely the sort of "[c]onclusory allegations or legal conclusions masquerading as factual conclusions [that] will not suffice to [defeat] a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). There are no plausible allegations of an agreement to defame Dr. Cameron.  Thus, Dr. Novella is immune.

### 3.3     The Complaint is Time-Barred

Although the Court should apply Connecticut's (or Florida's) anti-SLAPP law, the New York statute of limitations applies and is dispositive.  Plaintiff's attempts to plead around the statute of limitations defenses and "single publication rule," are to no avail.

CPLR § 215(3) provides that "an action to recover damages for . . . libel, slander, [or] false words causing special damages . . . shall be commenced within one year."  The Complaint and its exhibits, on their face, reveal that the alleged defamatory

- 12 -

statements in the Cameron Article were not published within one year of Plaintiff initiating this action.  Plaintiff seeks to invoke the two-year statute of limitations of Fla. Stat. § 95.11(4)(g).  Complaint at  ¶¶ 138-139.  New York's statute of limitations, rather than Florida's applies.

This Court may apply both the New York statute of limitations and Connecticut's anti-SLAPP law pursuant to the doctrine of *dépecage*. "Under the doctrine of *dépecage* as applied by New York courts, the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate other issues." *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 397 n.1 (2d Cir. 2001) (internal quotation omitted).   Here, the anti-SLAPP law of Connecticut should apply as to the law of substantive immunity from suit, while New York's law of defamation, including its statute of limitations, also applies.  *See Barrett, supra* at *8 ("Under the doctrine of *dépecage*, the issue of whether a statement is defamatory is distinct from the issue of whether that statement is privileged.") (collecting cases).

"When *dépecage* is relied upon, New York courts utilize the paramount interest test to decide which law to apply to each of the issues." *Simon v. Philip Morris*, 2000 U.S. Dist. LEXIS 16713, at *90 (E.D.N.Y. Nov. 16, 2000) (applying *dépecage* to statute of limitations choice) citing *Hutner v. Greene*, 734 F.2d 896 (2d Cir. 1984).  New York has a paramount interest in applying its statute of limitations, expressly providing that, for New York residents such as Dr. Cameron, the law of New York applies irrespective of where the action accrues.[24] *See* CPLR 202; *see also Braniff Airways, Inc. v. Curtiss-Wright Corp.*, 424 F.2d 427, 428 (2d Cir. 1970)("for causes accruing in another state, non-resident plaintiffs will be barred from instituting suit if they are barred by the statute of limitations of either jurisdiction; New York residents, however, will be affected only by the New York limitations period.")  Dr. Cameron seems to think the Florida period applies under the borrowing statute—it does not.  However, if

---

[24] In contrast, Connecticut has a paramount interest in protecting its citizens from meritless suits based on First Amendment-protected speech on a matter of public concern.

the borrowing statute does not apply and the Court finds Florida has the most significant interest and its statute of limitations applies, and if the Court opts not to engage in *dépeçage*, so too should Florida's anti-SLAPP statute apply.[25]

New York strictly adheres to the "single publication rule," even on online communications. *See Firth v. State*, 98 N.Y.2d 365, 370 (2002). The statute is only "retriggered" by a "republication" of the statement on a separate occasion from the original that is meant to reach a new audience. *See id.* at 371 (quoting *Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422, 435 (1981)). It is also "irrelevant, for statute of limitations purposes, that a story remains online after its publication." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 267 (S.D.N.Y. Aug. 1, 2013).

The Raxlen Article is not a republication of the Cameron Article. As this Court recently observed:

> Although one who republishes defamatory content may be liable, *see* Restatement (Second) of Torts § 578 (1977), "[a] hyperlink . . . does not duplicate the content of a prior publication; rather, it identifies the location of an existing publication," *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1137 (N.D. Ill. 2016); *see In re Phila. Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012) ("[T]hough a link and reference may bring readers' attention to the existence of an article, they do not republish the article.").

*Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 39 (S.D.N.Y. 2018); *see also Haefner v. New York Media, LLC*, 27 Misc. 3d 1208(A) (Sup. Ct. 2009); *Martin v. Daily News, L.P.*, 990 N.Y.S. 2d 473, 483 (1st Dep't 2014); *Graboff v. Am. Ass'n of Orthopaedic Surgeons*, 559 Fed. Appx. 191, 195 (3d Cir. 2014). As discussed below, since nothing in the Raxlen Article is actionable, allegations based on the Cameron

---

[25] Similarly, if Florida law applies, the Complaint fails for failure to give notice under Fla. Stat. § 770.01. The purpose is to permit a publisher to make a correction, apology, or retraction. *See* Fla. Stat. § 770.02. The law requires written notice to a media defendant, including a blog, at least five days prior to initiating suit for libel based on a publication in the online "medium". *See Comins v. VanVoorhis*, 135 So. 3d 545 (Fla. Dist. Ct. App. 2014); *Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1307-08 (S.D. Fla. 2008). This defect cannot be cured by mere amendment, but rather the action must be dismissed. *See Gifford v. Bruckner*, 565 So. 2d 887, 888 n.1 (Fla. 2d DCA 1990). If Connecticut law applies, Plaintiff is entitled only to actual damages, of which none are specifically pleaded, for failure to requests a retraction. *See* Conn. Gen. Stat. § 52-237.

1    Article are time-barred.

2    **3.4      The Statements are Neither False nor Defamatory**

3    Assuming *arguendo* that     Section     230 does not     immunize     Dr.     Novella,

4 and Plaintiff timely brought his claims, Plaintiff failed to state a claim for relief.  The elements

5 of a defamation claim are: "(1) a defamatory statement of fact; (2) that is false; (3) published to

6 a third party; (4) 'of and concerning' the plaintiff; (5) made with the applicable level of fault on

7 the part of the speaker; (6) causing special harm or constituting [defamation] *per se*; and (7) not

8 protected by privilege." *Neal, supra* at *5 (citing *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir.

9 2001)).[26]  Dr. Cameron cannot meet elements 1, 2, 5, and 7.[27]   A statement can only be

10 defamatory if it is a statement of fact that is provably true or false, and when a statement is

11 "substantially true," such that "'the truth is so near to the facts as published that fine and shaded

12 distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of

13 libel, no legal harm has been done.'"  *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 503-04

14 (S.D.N.Y. 2012) (quoting *Cafferty v. S. Tier Publ'g Co.*, 226 N.Y. 87, 93 (1919)).

15    A defamation plaintiff must "specify the words about which they complain. 'The failure

16 to make any reference to any allegedly defamatory statements fails to comport with even the

17 liberal pleading requirements of Federal Rule of Civil Procedure 8.'"  *Ivchencko v. Glob. MRV,*

18 *Inc*, 2013 U.S. Dist. LEXIS 36127, at *33 (E.D.N.Y. Feb. 4, 2013) quoting *The Homeless*

19 *Patrol v. Joseph Volpe Family*, 2010 U.S. Dist. LEXIS 73914 at *16 (S.D.N.Y. 2010).  "Mere

20 conclusory statements that the claimant was disparaged by false statements are insufficient to

---

[26] The law of defamation is essentially the same in Connecticut and Florida.  *See Simms v. Seaman*, 308 Conn. 523, 547-48 (2013)(quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28 (2009)); *Woodcock v. Journal Publishing Co., Inc.*, 230 Conn. 525, 554 (1994); and *Skakel v. Grace*, 2014 U.S. Dist. LEXIS 30124 at *4-5 (D.Conn. 2014); and *see Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214 n.8 (Fla. 2010), citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008); *Fortson v. Colangelo*, 434 F. Supp.2d 1369, 1378-79 (S.D. Fla. 2006).

[27] Dr. Cameron likely cannot meet the element of harm, either.  He has pointed to no special damages.  And he nakedly assets they injure him in his profession.  Amended Complaint at ¶ 165.  But, it is best to determine whether a statement is capable of conveying a defamatory meaning and then to determine whether it is libel per se or per quod. *See Horne v. Matthews*, 1997 U.S. Dist. LEXIS 14518, *6-7 n.4 (S.D.N.Y. Sept. 25, 1997).

1    state a defamation claim.'" *Camp Summit of Summitville, Inc. v. Visinski*, 2007 U.S. Dist. LEXIS

2    28496, at *10 (S.D.N.Y. Apr. 16, 2007). Although Dr. Cameron liberally quotes the Cameron

3    Article, he mentions few particularity factual assertions he claims are false, and none he directly

4    attributes to Dr. Novella. Dr. Novella's "role in any alleged defamation 'is on its face mere

5    speculation.'" *Neal, supra* at *7, quoting *Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F.

6    Supp. 661, 668 (S.D.N.Y. 1991). Where a "claim for defamation against all defendants, lumped

7    together" was "pleaded in so vague and conclusory a fashion as to fail to satisfy even the lenient

8    notice pleading requirements of Rule 8(a)", such should be dismissed. *Id.* at * 7, quoting

9    *Rafferty v. Halprin*, 1991 U.S. Dist. LEXIS 10344, at *8 (S.D.N.Y. July 26, 1991).

10          Statements of opinion or rhetorical hyperbole are not statements of fact and cannot be

11   defamatory. There "is no such thing as a false idea." *Gertz v. Robert Welch*, 418 U.S. 323,

12   339-40 (1974); *see also Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 286 (1974)

13   (finding "rhetorical hyperbole" and "lusty and imaginative expression" not

14   actionable). Whether a statement is factual is a question of law that the Court should dispose of

15   at the pleading stage. *See Gertz*, 418 U.S. at 339-40; *Condit v. Dunne*, 317 F. Supp. 2d 344, 358

16   (S.D.N.Y 2004); *Treppel v. Biovail Corp.*, 2004 U.S. Dist. LEXIS 20714, *36-37 (S.D.N.Y.

17   Oct. 15, 2004); *Adelson v. Harris*, 973 F. Supp. 2d 467, 482 (S.D.N.Y. Sept. 30, 2013).

18          In the scientific context, "while statements about contested and contestable scientific

19   hypotheses constitute assertions about the world that are in principle matters of verifiable 'fact,'

20   for purposes of the First Amendment and the laws relating to fair competition and defamation,

21   they are more closely akin to matters of opinion, and are so understood by the relevant scientific

22   communities." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 497 (2d Cir. 2013);

23   *see also Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994) ("Scientific controversies must

24   be settled by the methods of science rather than by the methods of litigation. . . . More papers,

25   more discussion, better data, and more satisfactory models — not larger awards of damages —

26   mark the path toward superior understanding of the world around us."). Further, a court must

27

28

consider the overall context, tone, and apparent purpose of a statement and whether a reasonable reader, not any conceivable reader, would interpret a given statement literally or otherwise view it as a mere expression of opinion, hyperbole or otherwise. *See Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 229 (2d Cir. 1985); *see also Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014); *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995); *Torain v. Liu*, 279 Fed. Appx. 46, 46 (2d Cir. 2008); *Fleiss v. Wiswell*, 157 Fed. Appx. 417, 417 (2d Cir. 2005) (summary order). Notably, "'when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts, leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment.'" *Dunne*, 317 F. Supp. 2d at 364 (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995)). The New York Constitution provides even greater protection for statements of opinion, finding that statements of "pure" opinion are absolutely protected. *See Flamm v. Am. Assoc. of Univ. Women*, 201 F.3d 144, 147-48 (2d Cir. 2000) (New York uses "a flexible approach in distinguishing actionable fact from non-actionable opinion").

### 3.4.1   The Cameron Article is Not Libelous

In paragraph 65 of the Amended Complaint, Dr. Cameron cites to a publication dated nine months after the Cameron Article in which Ms. Bellamy described what some "Lyme literate" doctors are doing; **no mention is made of Dr. Cameron**. Amd. Compl. at ¶ 65 & Dkt. No. 73-3. Paragraphs 66, 70-74 assert this includes Dr Cameron, based on the "tags" at the end of the article that the June 22, 2017 somehow *republished* the March 15, 2018, article that *had not yet been written*. Dr. Cameron claims that the later-published snippet implies that he is "scamming patients out of thousands of dollars with needless long-term antibiotics based on a fake diagnosis of 'chronic Lyme'." Complaint at ¶ 30. Setting aside the temporal paradox and omission of any mention of Dr. Cameron, this is a statement of opinion, not fact. The term "scam":

means different things to different people . . . and there is not a single usage in

1
2

common phraseology.  While some connotations of the word may encompass criminal behavior, others do not.  The lack of precisions makes the assertion "X is a scam" incapable of being proven true or false.

3   *McCabe v. Rattiner*, 814 F.2d 839, 842 (1st Cir. 1987); *see also Potomac Valve & Fittin, Inc. v.*

4   *Crawford Fitting co.*, 829 F.2d 1280, 1287 (4th Cir. 1987) (citing *McCabe* with

5   approval); *Harris*, 973 F. Supp. 2d 467, 491 (S.D.N.Y. 2013)(same); *BidZirk, LLC v. Smith*,

6   2007 WL 3119445 (D.S.C. Oct. 22, 2007)(same); *Washington v. Smith*, 893 F. Supp. 60, 63

7   (D.D.C. 1995)(same).  *Accord Tobinick v. Novella*, 108 F. Supp. 3d 1299 (S.D. Fla. 2015)(Dr.

8   Novella calling another doctor's medical clinic "dubious" was not actionable) *aff'd* 848 F.3d

9   935 (11th Cir. 2017).  Attorney Bellamy disclosed why she thinks the diagnosis is fake and the

10  treatments a needless scam, based on the Feder article.

11          In paragraph 75, Plaintiff claims that he did never "stipulated" to the charges, except that

12  he admitted he "cannot successfully defend against at least one of the acts of misconduct

13  alleged." *See* Dkt. No. 50-2 at 3.  Although New York law may distinguish between admitting

14  guilt to one act of misconduct and asserting that at least one act cannot be defended against

15  (Amd. Comp. at ¶ 79 quoting 10 NYCRR § 51.10(c)), the Cameron Article explicitly states that

16  Dr. Cameron chose the "not successfully defend" part, quoting the Department of Health's

17  website directly,[30] in formatting that showed it was a quote.  See Exhibit 2, N.Y. Dep't of

18  Health Website.[31]  Thus, on its face, the statement is true and the allegation is counterfactual to

19  his own prior concessions to the Board and this Court.

20          In paragraphs 81 & 87, Dr. Cameron quotes two paragraphs where Attorney Bellamy

21  gives her opinion "[r]eading between the lines," "if you think about it[.]" This is pure opinion

22  based on the disclosed underlying Consent Order, Consent Agreement, and Statement of

23  Charges.  *See* Dkt. No. 50-2.  Plaintiff admitted at least one to be provable and conceded to this

24

25  [30] Such quoting is otherwise protected by the fair report privilege, discussed below.
    [31] Dr. Cameron now asserts he meant he only could not defend the record-keeping charge.  Amd. Compl. at ¶ 80.
26  His Consent Agreement mentions no such limitation; the nature of the discipline exceeds such a minor violation.

27

28

1   Court "that the ILADS guidelines do not allow or advise the conduct alleged in the Statement of

2   Charges." *See* Dkt. No. 50-2 at 3 and *Zucker, supra,* at *20.  Though Plaintiff argues that this is

3   opinion based on undisclosed fact (Amd. Compl. at ¶ 84 & 88), the Consent Order and

4   Agreement on which they are based, and Dr. Cameron's own website, along with many articles

5   discussing so-called "chronic Lyme" are fully linked and made available.

6          Later, in paragraphs 97-109, Plaintiff takes issue with the term "uncontested" in

7   connection with a discussion of the charges.  Although Dr. Cameron may have filed a general

8   denial, the allegations were uncontested in the Consent Agreement and Consent Order, nor is

9   there any allegation Attorney Bellamy possessed a copy of this general denial.  Notably, Dr.

10  Cameron does not otherwise allege she misstated the nature of the charges or the settlement

11  process.  Neither would any reasonable person give that general denial any weight or credibility

12  where Dr. Cameron later reversed course to admit that at least one charge was indefensible.  At

13  worst, this is mild editorialization that has no effect on the "gist" or "sting" of the statement,

14  and thus does not make it defamatory, particularly in light of the overall context of the

15  statements at issue. *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991) (holding that

16  "[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the

17  libelous charge is justified); *see Rubenstein v. Transit Workers' Union of Greater New York*,

18  2005 U.S. Dist. LEXIS 19969 (S.DN.Y. Sept. 6, 2005) (statements that union president was a

19  bigot and anti-Semite were protected as opinion based on disclosed facts); *Silvercorp Metals*

20  *Inc. v. Anthion Mgm't LLC*, 2012 WL 3569952 (Sup. Ct. N.Y. Cty. Aug. 16, 2012) (letters with

21  supporting hyperlinks claiming plaintiff misstated its financial figures and valuations were

22  protected as opinion based on disclosed facts); *Themed Restaurants, Inc. v. Zagat Survey, LLC*,

23  801 N.Y.S.2d 38, 39-40 (1st Dep't 2005) (restaurant review based on anonymous consumer

24  reviews was protected as opinion); *Sandler v. Simoes*, 609 F. Supp. 2d 293 (E.D.NY. 2009)

25  (complaints about plaintiff's products with consumer protection agencies warning of unethical

26  business practices were clearly dissatisfied customer opinions).

27

28

Even if these were not statements of opinion, Plaintiff has not plausibly alleged facts that allow for an inference of actual malice, which it must do as a public figure defamation plaintiff.  Aside from conclusory allegations as to Defendant's knowledge of the falsity of these statements, Plaintiff alleges no plausible facts tending to show that Defendant "knew, recklessly disregarded, or should have known" that Dr. Cameron filed a denial.  A mere "failure to investigate the veracity of the allegation [cannot] establish actual malice," unless such a failure "amounts to a 'purposeful avoidance,' that is, conduct that 'evinces an intent to avoid the truth.'"  *Van-Go Transp. Co. v. New York City Bd. of Educ.*, 971 F. Supp. 90, 105 (E.D.N.Y. 1997) (quoting *Sweeney v. Prisoners' Legal Servs. of New York, Inc.*, 84 N.Y.2d 786, 793 (1995)).  The statement is not materially false and, to the extent there was error, it was not made with actual malice.   At most, Plaintiff has alleged a failure to investigate claims with sufficient diligence, which is insufficient to plead actual malice, and thus Plaintiff's defamation claims must be dismissed.  *Biro*, 807 F.3d at 546-47.

In Paragraphs 11-113, Plaintiff takes issue with the statement that he is "not a 'recognized leader'"[33] and that "'chronic Lyme' is not a real disease".[34]  But this kind of statement is precisely the type of unprovable opinion that cannot give rise to liability.  And, it is based on the disclosed fact—Dr. Feder, whose expertise was published in the New England Journal of Medicine, specifically disputed Dr. Cameron's practice, indicating he does not view Plaintiff as a recognized leader.  *See* Dkt. No. 50-1.

### 3.4.2   The Raxlen Article is Not Libellous

As discussed above, the Raxlen Article does not act as a republication of the Cameron Article.  Contrast Amd. Compl. at ¶¶ 114-120.  However, Dr. Cameron contends that being labelled "Lyme literate", places him among a cohort who "fabricated a disease" with a "fake medical diagnosis".  Amd. Compl. at ¶¶ 121-124.  No reader would believe Attorney Bellamy

---

[33] This assertion highlights Plaintiff's admission that he is a public figure, subject to the actual malice standard.

[34] Plaintiff does not argue falsity about studies showing long-term antibiotics not offering substantial improvement.

literally claims Dr. Cameron created a bacterium in the lab that makes people ill.  Rather, the entire context, with plentiful links to sources, indicates Attorney Bellamy does not believe there is sufficient scientific evidence that such a disease, as diagnosed by practitioners like Dr. Cameron, actually exists.  Whether or not someone believes a medical claim is pure opinion.

In the first two paragraphs 125,[36] Dr. Cameron quotes a discussion about the cost of treatments for "chronic Lyme" and the lack of sufficient evidentiary basis for them.  He asserts this means he is part of a scheme to make millions of dollars personally.  However, the Raxlen Article does not limit the cohort of Lyme-literate physicians to Drs. Cameron or Raxlen, or state that Dr. Cameron has ill-motive (when Dr. Cameron could just be scientifically ignorant).  These are general statements about Lyme-literate physicians, not specifically about Plaintiff.  *See Abramson v. Pataki*, 278 F.3d 93, 102 (2d Cir. 2002)("under the group libel doctrine, a plaintiff's claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group." [internal quotation marks omitted]);  *Accord Udell v. NYP Holdings, Inc.*, 2019 NY Slip Op 01250, ¶ 2 (App. Div. 2019)("the statements … were general statements about the judiciary such that a reasonable reader would have concluded that he or she was reading opinions, not facts, about the plaintiffs.")

In the 2nd ¶ 124 and 3rd ¶ 125, Dr. Cameron objects that he is characterized as taking "advantage" of patients with an order to "clean up his act."  As to the latter, the discipline imposed lends itself to the opinion that he must take remedial measures, *i.e.* clean up his act.  As to whether Dr. Cameron is taking "advantage" of patients, Attorney Bellamy does not assert he does so knowingly; rather she is providing her opinion that the patients are being taken advantage of by paying unnecessary sums for scientifically invalid treatments and diagnoses.  Thus, nothing in the Raxlen Article is separately actionable.

---

[36] There are three paragraphs numbered 125.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.5     The Articles are Privileged as a Fair Report

Under N.Y. Civ. Rights Law § 74, no libel action can be maintained "for the publication of a fair and true report of any…official proceeding[.]"   The articles here are reports of the official proceedings of the State Board of Public Health.   Importantly, "[t]he section 74 privilege is absolute and is not defeated by allegations of malice or bad faith." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009).

"For a report to be 'fair and true' within the meaning of § 74, it is enough that the substance of the article be substantially accurate." *Wenz v. Becker*, 948 F. Supp. 319, 324 (S.D.N.Y. 1996).   The challenged language of the headline and article of an official proceeding … 'should not be dissected and analyzed with a lexicographer's precision.'" *Idema v. Wager*, 120 F. Supp. 2d 361, 369 (S.D.N.Y. 2000) quoting *Becher v. Troy Publ'g Co., Inc.*, 183 A.D.2d 230, 234, 589 N.Y.S.2d 644, 646 (3rd Dept. 1992).

Similarly, under Florida law, a report "need not describe legal proceedings in technically precise language. … [Reporters have] a qualified privilege to report accurately on information received from government officials. The privilege extends to the publication of the contents of official documents, as long as the account is reasonably accurate and fair." *Rasmussen v. Collier Cty. Publ'g Co.*, 946 So. 2d 567, 570-71 (Fla. Dist. Ct. App. 2006). Under Connecticut law, the articles are privileged as "a fair and accurate report of judicial and official proceedings" and "fair comment on a matter of public interest." *Miller v. News Syndicate Co.*, 445 F.2d 356, 357-58 (2d Cir. 1971).

The articles are substantially accurate, and Plaintiff's claims of falsity simply peck at the edges.   "Media defendants can add color. And they are not required to regurgitate the exact, precise language of their government sources. They can also summarize and focus publications as they choose." *Folta v. N.Y. Times Co.*, 2019 U.S. Dist. LEXIS 34533, at *18 (N.D. Fla. Feb. 27, 2019).   They accurately described the nature of the charges and the discipline imposed.   The articles were not about the minutiae of New York administrative law and pleas thereunder.

- 22 -

Referring to charges that Dr. Cameron admitted nebulously that there was at least one he could not defend in accepting discipline is tantamount to saying they are uncontested, in common parlance. "A cramped reading of the privilege would undercut its very purpose. It would open the door to far less meritorious suits by far less scrupulous plaintiffs, and it would contribute to the ongoing chipping-away of the rights and privileges necessary to the press's ability to play its intended role as government watchdog." *Id.* at *26 (N.D. Fla. Feb. 27, 2019). Thus, the fair report privilege precludes all claims based upon the charges, the proceedings, and the resolution thereof.[37]

## 4.0    CONCLUSION

Dr. Cameron does not like the publicity given to the disciplinary action by Attorney Bellamy. But, his untimely suit, against a Section 230-protected defendant, over an article that is substantially true and a fair report of the Board's proceedings, interspersed with commentary based on disclosed facts, is not the proper response.

Dr. Cameron apparently intends to make this case about trying to prove to a jury, instead of the scientific community, that his treatments are valid, and to silence lawful criticism. Scientific debate should be left to develop organically--whether he likes the results or not. The Complaint should be dismissed and Dr. Novella should be awarded his reasonable fees. Plaintiff amended once, no further litigation is warranted.

---

[37] To the extent the articles went beyond the government documents, discussing chronic Lyme and practitioners in general, those were statements of opinion based on disclosed facts and otherwise precluded by the group libel doctrine, discussed above.

Dated March 13, 2019.                    Respectfully submitted,

                                         /s/ *Jay M. Wolman*
                                         Jay M. Wolman (JW0600)
                                         RANDAZZA LEGAL GROUP, PLLC
                                         100 Pearl Street, 14th Floor
                                         Hartford, CT 06103
                                         Tel:     702-420-2001
                                         Email: ecf@randazza.com

                                         Marc J. Randazza, *pro hac vice*
                                         RANDAZZA LEGAL GROUP, PLLC
                                         2764 Lake Sahara Drive, Ste. 109
                                         Las Vegas, NV 89117
                                         Tel:     702-420-2001
                                         Email: ecf@randazza.com

                                         *Attorneys for Defendant,*
                                         *Steven Novella, M.D.*

Memorandum in Support of Motion to Dismiss

1

CASE NO.:  7:18-CV-10395 (VB)

2

**<u>CERTIFICATE OF SERVICE</u>**

3       I HEREBY CERTIFY that on March 13, 2019, I electronically filed the foregoing document

4   with the Clerk of the Court using CM/ECF.   I also certify that a true and correct copy of the

5   foregoing document is being served via transmission of Notices of Electronic Filing generated by

6   CM/ECF.

7

8                                               Respectfully submitted,

9                                               /s/ *Jay M. Wolman*

10                                              Jay M. Wolman (JW0600)
                                                Randazza Legal Group, PLLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                               - 25 -
28